UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
CHICAGO DIVISION



JAN 15 2025

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

|  |  |
|---|---|
| FTF LENDING LLC, a Delaware limited liability company<br><br>Plaintiff<br><br>vs.<br><br>L & L LOTT CONSTRUCTION LLC, an Illinois limited liability company, having taken title as L&L LOTT CONSTRUCTION CO., and ANDRE LOTT, an individual<br><br>Defendants | CASE NO.: 1:23-cv-07504 |

---

### MOVANT-INTERVENOR PLAINTIFF FTF REO, LLC'S MOTION TO (a) CONFIRM THE JUDICIAL SALE OF REAL ESTATE, (b) APPROVE THE SPECIAL COMMISSIONER'S REPORT OF SALE AND DISTRIBUTION, (c) AUTHORIZE THE SPECIAL COMMISSIONER TO EXECUTE A DEED, (d) AWARD A WRIT OF POSSESSION, (e) ENTER A DEFICIENCY JUDGMENT, AND (f) GRANT OTHER RELIEF

1414 West 73rd Place, Chicago, Illinois 60636
(PIN 20-29-122-021-0000)

Now comes Movant-Intervenor Plaintiff FTF REO, LLC, a Delaware limited liability company

("**FTF REO LLC**"), successor by assignment to FTF Lending, LLC ("**FTF Lending LLC**"), by and

through its undersigned counsel, and respectfully requests an Order (a) confirming the judicial sale of the

hereinafter-described Property on November 12, 2024, (b) approving the Report of Sale and Distribution

prepared, executed and filed by the hereinafter-described Special Commissioner, (c) authorizing the

hereinafter-described Special Commissioner to execute and deliver a deed to FTF REO LLC to transfer and

convey the hereinafter-described Property, with said deed being exempt from all transfer taxes, either state

or local, and permitting the Recorder of Deeds, Cook County, Illinois to immediately record the deed

without affixing any transfer stamps, (d) awarding a Writ of Possession in favor of FTF REO LLC to place

FTF REO LLC in immediate possession of the Property, (e) entered a deficiency judgment in favor of FTF

REO LLC and against L & L Lott Construction LLC, an Illinois limited liability company, having taken

title as L&L Lott Construction Co. ("**L & L Lott Construction LLC**") and Andre Lott, an individual

("**Lott**"), jointly and severally, in the amount of $34,573.42, and (f) granting FTF REO LLC all such further relief as this Honorable Court deems just and proper at law or in equity.

In support of this Motion, FTF REO LLC represents and states as follows:

1.    On September 7, 2023, FTF Lending LLC filed a certain Complaint for (1) Breach of Promissory Note (the "**Note**"), (2) Breach of Guaranty (the "**Guaranty**"), and (3) Foreclosure of Mortgage, Assignment of Leases and Rents, Fixture Filing, and Security Agreement (the "**Mortgage**") (the "**Complaint**"). (ECF Doc. 1.)

2.    The legal description of the Property is:

LOT 17 IN JOHN R. LYMAN'S RESUBDIVISION OF LOTS 16 TO 30, BOTH INCLUSIVE IN MARGARET R. MCKEOWN'S RESUBDIVISION OF BLOCK 10 IN JONES AND OTHERS SUBDIVISION IN THE WEST 1/2 OF SECTION 29, TOWNSHIP 38 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Address:     <u>1414 West 73rd Place, Chicago, Illinois 60636</u>
Parcel ID:   <u>20-29-122-021-0000</u>

3.    On September 27, 2024, this Court entered that certain Judgment Entry and Decree of Mortgage Foreclosure and Sale (the "**Judgment Entry**"). (ECF Doc. 26.)  The Judgment Entry, in part, (a) entered a monetary judgment in favor of FTF Lending LLC and against L & L Lott Construction LLC upon the Note in the amount of $122,563.87, plus per diem interest in the sum of $88.92 from April 2, 2024 and thereafter, and all other amounts recoverable under the Note, (b) entered a monetary judgment in favor of FTF Lending LLC and against Lott upon the Guaranty in the amount of $122,563.87, plus per diem interest in the sum of $88.92 from April 2, 2024 and thereafter, and all other amounts recoverable under the Guaranty, (c) declared the Mortgage constitutes a valid lien encumbering the Property that is prior, paramount and superior to the rights, title and interest of all persons and entities in and to the Property, (d) foreclosed the Mortgage, (e) fixed the amount due under the Mortgage at $122,563.87, plus per diem interest in the sum of $88.92 from April 2, 2024 and thereafter, and all other amounts recoverable under the Mortgage, and (f) authorized the judicial sale of the Property with the proceeds paid to FTF Lending LLC until the debt of L & L Lott Construction LLC was fully repaid. (*Id.*)

4.      On September 27, 2024, this Court entered that certain Order appointing The Judicial Sales Corporation as Special Commissioner (the "**Special Commissioner**") pursuant to 28 U.S.C. § 2001(a) and 735 ILCS 5/15-1506(f). (ECF Doc. 28.)  The Special Commissioner was authorized to conduct the foreclosure sale of the Property by public auction. (*Id.*)

5.      On November 12, 2024, the Special Commissioner conducted the foreclosure sale of the Property at 10:30 a.m. local time at The Judicial Sales Corporation, One South Wacker Drive, Floor 1, Suite 35R, Chicago, Illinois 60606. (ECF Docs. 29, 30, 31, 32, 33 and 34.)

6.      All notices required by 735 ILCS 5/15-1507(c) were given to L & L Lott Construction LLC and to all parties in interest and claimants; the terms of the judicial sale were fair and reasonable; the judicial sale was conducted fairly and without fraud; and justice was done in all respects. (*Id.*)

7.      At the foreclosure sale, FTF REO LLC bid the sum of $109,120.45.  This bid was the highest and best bid.  Accordingly, the Special Commissioner sold the Property to FTF REO LLC as a credit bid for the debt entered under the Judgment Entry. (ECF Docs. 32, 33 and 34.)

8.      The Special Commissioner prepared, executed and filed the (a) Receipt of Sale, (b) Certificate of Sale, and (c) Report of Sale and Distribution. (*Id.*)

9.      According to the Special Commissioner's Report of Sale and Distribution, the proceeds to FTF REO LLC subtotaled $143,145.87, the costs advanced during redemption subtotaled $0.00, and the costs of sale subtotaled $548.00, for a grand total due to FTF REO LLC of $143,693.87.  Since the net proceeds from the foreclosure sale of the Property are $109,120.45, which is less than the amount due to FTF REO LLC, there is a deficiency in the amount of $34,573.42. (ECF Doc. 34.)

10.     The Report of Sale and Distribution reflects that a deficiency remains following confirmation of the judicial sale of the Property in the amount of $34,573.42. (*Id.*)

11.     Accordingly, FTF REO LLC respectfully requests the following relief:

        a.      confirm the judicial sale of the Property on November 12, 2024; and

        b.      approve the Special Commissioner's Report of Sale and Distribution; and

        c.      authorize the Special Commissioner to execute and deliver a deed to FTF REO

3

LLC to transfer and convey the Property, with said deed being exempt from all

transfer taxes, either state or local, and permitting the Recorder of Deeds, Cook

County, Illinois to immediately record the deed without affixing any transfer

stamps; and

d.      award a Writ of Possession in favor of FTF REO LLC to place FTF REO LLC in

immediate possession of the Property; and

e.      enter a deficiency judgment in favor of FTF REO LLC and against L & L Lott

Construction LLC and Lott, jointly and severally, in the amount of $34,573.42;

and

f.      grant FTF REO LLC all such further relief as this Honorable Court deems just and

proper at law or in equity.

12.    A proposed Order (a) Confirming the Judicial Sale of Real Estate, (b) Approving the

Special Commissioner's Report of Sale and Distribution, (c) Authorizing the Special Commissioner to

Execute a Deed, (d) Awarding a Writ of Possession, (e) Entering a Deficiency Judgment, and (f) Granting

Other Relief is attached hereto as **Exhibit 1** for this Court's review and consideration.

Respectfully submitted by:

*s/ Michael J. Palumbo*

MICHAEL J. PALUMBO, ESQUIRE
Illinois Attorney Registration #6324998
ANTHONY J. GINGO, ESQUIRE
Ohio Attorney Registration #0085669
Gingo Palumbo Law Group LLC
4700 Rockside Road, Suite 440
Independence, Ohio 44131
T: (216) 503-9512
F: (888) 827-0855
E: michael@gplawllc.com
E: anthony@gplawllc.com
*Counsel for Plaintiff and Movant-Intervenor Plaintiff*
*FTF REO, LLC*

4

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies the following:

1.      On January 6, 2025, *Movant-Intervenor Plaintiff FTF REO, LLC's Motion to (a) Confirm the Judicial Sale of Real Estate, (b) Approve the Special Commissioner's Report of Sale and Distribution, (c) Authorize the Special Commissioner to Execute a Deed, (d) Award a Writ of Possession, (e) Enter a Deficiency Judgment, and (f) Grant Other Relief* (the "**Pleading**") was filed via the CM/ECF Filing System for the United States District Court for the Northern District of Illinois (Chicago Division).

2.      The Parties appearing on the Notice of Electronic Filing, as noted below, may access the Pleading through the CM/ECF system:

        Michael J. Palumbo, Esquire, michael@gplawllc.com

3.      On January 6, 2025, a true and accurate copy of the Pleading was served by United States regular mail, postage prepaid, and by electronic mail upon the following:

        L & L Lott Construction LLC
        Attn: Andre Lott
        8506 South Aberdeen Street
        Chicago, Illinois 60620
        lottconstruction20@gmail.com

        Andre Lott
        8506 South Aberdeen Street
        Chicago, Illinois 60620
        lottconstruction20@gmail.com

        *s/ Michael J. Palumbo*
        _____
        Michael J. Palumbo, Esquire
        Anthony J. Gingo, Esquire
        *Counsel for Plaintiff and Movant-Intervenor Plaintiff FTF REO, LLC*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
CHICAGO DIVISION

| | |
|---|---|
| FTF LENDING LLC, a Delaware limited liability company<br><br>                                 Plaintiff<br><br>vs.<br><br>L & L LOTT CONSTRUCTION LLC, an Illinois limited liability company, having taken title as L&L LOTT CONSTRUCTION CO., and ANDRE LOTT, an individual<br><br>                                Defendants | CASE NO.: 1:23-cv-07504 |

<u>ORDER (a) CONFIRMING THE JUDICIAL SALE OF REAL ESTATE, (b) APPROVING THE
SPECIAL COMMISSIONER'S REPORT OF SALE AND DISTRIBUTION, (c) AUTHORIZING THE
SPECIAL COMMISSIONER TO EXECUTE A DEED, (d) AWARDING A WRIT OF POSSESSION,
(e) ENTERING A DEFICIENCY JUDGMENT, AND (f) GRANTING OTHER RELIEF</u>

1414 West 73rd Place, Chicago, Illinois 60636
(PIN 20-29-122-021-0000)

      This cause came to be heard on the Motion of the Movant-Intervenor Plaintiff FTF REO, LLC, a

Delaware limited liability company ("**FTF REO LLC**"), successor by assignment to FTF Lending, LLC

("**FTF Lending LLC**"), to (a) confirm the judicial sale of the hereinafter-described Property, (b) approve

the Special Commissioner's Report of Sale and Distribution, (c) authorize the Special Commissioner to

execute a deed, (d) award a Writ of Possession, (e) enter a deficiency judgment, and (f) grant other relief.

The Motion was filed on January 6, 2025.

      The Court, having examined, heard and/or reviewed the Special Commissioner's Report of Sale

and Distribution, the Motion, the presentation of the Movant-Intervenor Plaintiff's counsel, and the record,

FINDS as follows:

      1.      Proper notice of the Motion has been given to all interested parties and claimants in accordance with this Court's motion practice and three-day notice requirement.

      2.      According to the Judgment Entry and Decree of Mortgage Foreclosure of Sale, the subject Mortgage was foreclosed, the amount due under the subject Mortgage was fixed at $122,563.87, plus interest at the per diem rate of $88.92 from April 2, 2024

and thereafter, and all other amounts recoverable under the subject Mortgage. (ECF Doc. 26.)

3.     According to the Judgment Entry and Decree of Mortgage Foreclosure of Sale, the subject Mortgage was foreclosed and the real property more commonly known as 1414 West 73rd Place, Chicago, Illinois 60636 (PIN 20-29-122-021-0000) (the "**Property**") and more specifically described as follows:

LOT 17 IN JOHN R. LYMAN'S RESUBDIVISION OF LOTS 16 TO 30, BOTH INCLUSIVE IN MARGARET R. MCKEOWN'S RESUBDIVISION OF BLOCK 10 IN JONES AND OTHERS SUBDIVISION IN THE WEST 1/2 OF SECTION 29, TOWNSHIP 38 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Address:    1414 West 73rd Place, Chicago, Illinois 60636
Parcel ID:   20-29-122-021-0000

The Mortgage was ordered to be sold with the proceeds applied against the debt owed by L & L Lott Construction LLC, an Illinois limited liability company, having taken title as L&L Lott Construction Co. ("**L & L Lott Construction LLC**"), to Plaintiff FTF Lending, LLC until fully repaid. (ECF Doc. 26.)

4.     The Judicial Sales Corporation was appointed as Special Commissioner pursuant to 28 U.S.C. § 2001(a) and 735 ILCS 5/15-1506(f) and authorized to sell the Property by public auction pursuant to law and Order(s) of this Court. (ECF Doc. 28.)

5.     All notices of the judicial sale as required by 735 ILCS 5/15-1507(c) and Order(s) of this Court were given to L & L Lott Construction LLC, the legal owner of the Property, and to all parties in interest and claimants. (ECF Docs. 29, 30 and 31.)

6.     The Special Commissioner conducted the judicial sale of the Property on November 12, 2024 at which time the Property was sold to Movant-Intervenor Plaintiff FTF REO LLC as the highest bidder for the sum of $109,120.45. (ECF Docs. 32, 33 and 34.) The terms of the judicial sale were fair and reasonable, and the judicial sale was conducted fairly and without fraud. Justice was done in all respects.

7.     No objections to the judicial sale of the Property have been filed or otherwise asserted.

8.     According to the Special Commissioner's Report of Sale and Distribution, the total balance due to Movant-Intervenor Plaintiff FTF REO LLC was $121,944.58 against which a credit was applied in the amount of $57,124.00 for Movant-Intervenor Plaintiff FTF REO LLC's bid, resulting in no sale proceeds to be distributed and a deficiency balance of $64,820.58. (ECF Doc. 60.)

9.     The Special Commissioner prepared, executed and filed the (a) Receipt of Sale, (b) Certificate of Sale, (c) Report of Sale and Distribution. (ECF Docs. 32, 33 and 34.)

10.    The judicial sale of the Property was fairly and properly conducted and conforms to the law and Order(s) of this Court.

Therefore, it is hereby ORDERED, ADJUDGED and DECREED as follows:

A.    Movant-Intervenor Plaintiff FTF REO LLC's Motion to (a) confirm the judicial sale of the Property, (b) approve the Special Commissioner's Report of Sale and Distribution, (c) authorize the Special Commissioner to execute a deed, (d) award a Writ of Possession, (e) enter a deficiency judgment, and (f) grant other relief is APPROVED and GRANTED.

B.    The judicial sale of the Property on November 12, 2024 is approved, ratified and confirmed.

C.    The Special Commissioner's Report of Sale and Distribution is approved, ratified and confirmed.

D.    The Special Commissioner is authorized to execute a deed in favor of Movant-Intervenor Plaintiff FTF REO LLC to transfer and convey the Property. The Deed shall be exempt from all transfer taxes, either state or local. The Recorder of Deeds of Cook County, Illinois shall be permitted to immediately record the deed without affixing any transfer stamps.

E.    Movant-Intervenor Plaintiff FTF REO LLC is subrogated to all rights of the original Mortgagee FTF Lending, LLC in the Property to the extent necessary for the protection of Movant-Intervenor Plaintiff's title.

F.    Movant-Intervenor Plaintiff FTF REO LLC shall be awarded a Writ of Possession to place the Movant-Intervenor Plaintiff in immediate possession of the Property.

G.    A deficiency judgment shall be entered in favor of Movant-Intervenor Plaintiff FTF REO LLC and against L & L Lott Construction LLC and Andre Lott, jointly and severally, in the amount of $34,573.42, plus interest at the per diem rate of $88.92 from April 2, 2024 and thereafter, and all other amounts recoverable under the subject Note, Guaranty and Mortgage.

H.    The following lien(s) recorded against the Property shall be released:

    1.    that certain Mortgage, Assignment of Leases and Rents, Fixture Filing, and Security Agreement dated March 2, 2022, executed by L & L Lott Construction LLC, delivered to FTF Lending, LLC, and recorded on March 15, 2022 in the Office of the Clerk, Cook County, Illinois as Document #2207406329; and

    2.    that certain Uniform Commercial Code Fixture Filing granted by L & L Lott Construction LLC, delivered to FTF Lending, LLC, and recorded on March 15, 2022 in the Office of the Clerk, Cook County, Illinois as Document #2207406330; and

    3.    that certain Notice of Lis Pendens filed by FTF Lending, LLC and recorded on September 13, 2023 in the Office of the Clerk, Cook County, Illinois as Document #2325641245.

I.      Movant-Intervenor Plaintiff FTF REO LLC shall serve all named Defendants with a copy of this Order by UPS delivery, United States certified mail, return receipt requested, and/or United States regular mail, postage prepaid.

J.      This Order is certified and entered by the Court, and there is no just reason to delay enforcement of or appeal pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.

BY THE COURT:

_____     _____
DATE                             STEVEN C. SEEGER
                                     UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
CHICAGO DIVISION

| | |
|---|---|
| FTF LENDING LLC, a Delaware limited liability company <br><br> Plaintiff <br><br> vs. <br><br> L & L LOTT CONSTRUCTION LLC, an Illinois limited liability company, having taken title as L&L LOTT CONSTRUCTION CO., and ANDRE LOTT, an individual <br><br> Defendants | CASE NO.: 1:23-cv-07504 |

### MOTION OF MOVANT-INTERVENOR PLAINTIFF FTF REO, LLC TO INTERVENE AND SUBSTITUTE IN FOR FTF LENDING, LLC AS PROPER PARTY PLAINTIFF AND REAL PARTY IN INTEREST PURSUANT TO FED. R. CIV. P. 24(a)(2) AND 25(c) AND 735 ILCS 5/15-1501(d)-(e)

Now comes Movant-Intervenor Plaintiff FTF REO, LLC, a Delaware limited liability company ("**FTF REO LLC**"), successor by assignment to FTF Lending, LLC ("**FTF Lending LLC**"), by and through its undersigned counsel, and respectfully requests an Order, pursuant to Rules 24(a)(2) and 25(c) of the Federal Rules of Civil Procedure and 735 ILCS 5/15-1501(d)-(e), (1) permitting FTF REO LLC to intervene as a matter of right in this action to protect FTF REO LLC's interest under the hereinafter-described Note, the hereinafter-described Guaranty, and the hereinafter-described Mortgage, (2) substituting FTF REO LLC in for FTF Lending LLC as the proper party Plaintiff and real party in interest in this action, and (3) granting FTF REO LLC all such further relief as this Honorable Court deems just and proper at law or in equity.

In support of this Motion, FTF REO LLC represents and states as follows:

1.     FTF REO LLC is a Delaware limited liability company with a principal place of business at 1300 East 9th Street, Suite 800, Cleveland, Ohio 44114.

2.     The within action, in part, is for judgment upon a certain promissory note (the "Note") dated March 2, 2022 and executed by L & L Lott Construction LLC, an Illinois limited liability company,

having taken title as L&L Lott Construction Co. ("**L & L Lott Construction LLC**"), in favor of FTF Lending LLC and FTF Lending LLC's successors and assigns. FTF Lending LLC was the original holder of the Note. L & L Lott Construction LLC executed the Note to secure a certain commercial loan in the original principal amount of $97,000.00, plus interest on the unpaid principal balance. A true and accurate copy of the Note is attached to this Motion as **Exhibit 1** and incorporated herein by reference.

3. FTF Lending subsequently transferred and assigned the Note to FTF REO LLC by (a) executing a certain endorsement and allonge to the Note (the "Allonge to Note") dated November 12, 2024 and certifying that the Note was endorsed "PAY TO THE ORDER OF FTF REO, LLC, A DELAWARE LIMITED LIABILITY COMPANY, WITHOUT RECOURSE AND WITHOUT REPRESENTATION OR WARRANTY, EXPRESS, IMPLIED, OR BY OPERATION OF LAW, OF ANY KIND AND NATURE WHATSOEVER", (b) appending or affixing the Allonge to Note to the original Note and making the Allonge to Note a permanent part of the Note, and (c) delivering possession of the original Note, with the Allonge to Note, to FTF REO LLC. A true and accurate copy of the Allonge to Note is attached to this Motion as **Exhibit 1** and incorporated herein by reference.

4. The within action, in part, is also for judgment upon a certain guaranty (the "**Guaranty**") dated March 2, 2022 and executed by Andre Lott, an individual ("**Lott**"), in favor of FTF Lending LLC and FTF Lending LLC's successors and assigns. FTF Lending LLC was the original holder of the Guaranty. Lott executed the Guaranty in favor of FTF Lending LLC to guarantee the prompt payment of all amounts under the Note and the due and prompt performance by L & L Lott Construction LLC of all obligations for which L & L Lott Construction LLC has recourse liability to FTF Lending LLC under the Note. A true and accurate copy of the Guaranty is attached to this Motion as **Exhibit 2** and incorporated herein by reference.

5. FTF Lending subsequently transferred and assigned the Guaranty to FTF REO LLC by (a) executing a certain assignment of security documents (the "**Assignment of Security Documents**") dated November 12, 2024 and certifying that the Guaranty was conveyed to FTF REO LLC without recourse and without representation or warranty, express, implied, or by operation of law, of any kind and

nature whatsoever, and (b) delivering possession of the original Guaranty, with the Assignment of Security Documents, to FTF REO LLC. A true and accurate copy of the Assignment of Security Documents is attached to this Motion as **Exhibit 2** and incorporated herein by reference.

6.      The within action, in part, is also for judicial foreclosure of one (1) parcel of real estate more commonly known as 1414 West 73rd Place, Chicago, Illinois 60636 (PIN 20-29-122-021-0000) (the **"Property"**).

1.      FTF Lending LLC was the original holder of a certain mortgage, assignment of leases and rents, fixture filing, and security agreement (the **"Mortgage"**) dated March 2, 2022 and executed by L & L Lott Construction LLC in favor of FTF Lending LLC and FTF Lending LLC's successors and assigns. L & L Lott Construction LLC granted the Mortgage upon the Property in favor of FTF Lending LLC to secure repayment of the Note. The Mortgage was recorded on March 15, 2022 in the Office of the Clerk, Cook County, Illinois as Document #2207406329. A true and accurate copy of the Mortgage is attached to this Motion as **Exhibit 3** and incorporated herein by reference. In furtherance of the Mortgage, a certain Uniform Commercial Code Fixture Filing (the **"UCC Fixture Filing"**) was recorded on March 15, 2022 in the Office of the Clerk, Cook County, Illinois as Document #2207406330. A true and accurate copy of the UCC Fixture Filing is attached to this Motion as **Exhibit 3** and incorporated herein by reference.

7.      FTF Lending subsequently assigned the Mortgage to FTF REO by a certain assignment of mortgage and security agreement (the **"Assignment of Mortgage"**) dated November 12, 2024 and executed by FTF Lending in favor of FTF REO and FTF REO's successors and assigns. The Assignment of Mortgage was recorded on December 30, 2024 in the Office of the Clerk, Cook County, Illinois as Document #2436530412. A true and accurate copy of the Assignment of Mortgage is attached to this Motion as **Exhibit 3** and incorporated herein by reference. In furtherance of the Assignment of Mortgage, a certain assignment of UCC Fixture Filing (the **"Assignment to UCC Fixture Filing"**) was recorded on January 3, 2025 in the Office of the Clerk, Cook County, Illinois as Document #2500324052.

A true and accurate copy of the Assignment of UCC Fixture Filing is attached to this Motion as **Exhibit 3** and incorporated herein by reference.

8.      According to Rule 24(a)(2) of the Federal Rules of Civil Procedures, "On timely motion, the court must permit anyone to intervene who claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

9.      According to Rule 25(c) of the Federal Rules of Civil Procedures, "If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, ordered the transferred to be substituted in the action or joined with the original party. The motion must be served as provided in Rule 25(a)(3)."

10.      According to Rule 25(a)(3) of the Federal Rules of Civil Procedures, "A motion to substitute, together with a notice of hearing, must be served on the parties as provided in Rule 5 and on nonparties in Rule 4."

11.      According to 735 ILCS 5/15-1501(d), "Any person who has or claims an interest in real estate which is the subject of a foreclosure or an interest in any debt secured by the mortgage shall have an unconditional right to appear and become a party in such foreclosure in accordance with subsection (e) of Section 15-1501 . . . ."

12.      According to 735 ILCS 5/15-1501(e), "After the right to intervene expires and prior to the sale in accordance with the judgment, the court may permit a person who has or claims an interest in the mortgaged real estate to appear and become a party on such terms as the court may deem just."

13.      FTF Lending LLC most recently transferred the Note, the Guaranty, and the Mortgage to FTF REO LLC. FTF REO LLC is the current holder of the Note, the Guaranty, and the Mortgage. Accordingly, FTF REO LLC is the proper party Plaintiff and real party in interest. Any disposition of the action without permitting the intervention of FTF REO LLC may, as a practical matter, impair or impede FTF REO LLC's ability to protect its interest in the Note, the Guaranty, the Mortgage, and the Property.

4

Therefore, FTF REO LLC respectfully requests that FTF REO LLC be voluntarily substituted in for FTF Lending LLC as the proper party Plaintiff and real party in interest in the within action.

14.     In light of the fact that judgment by default has already been entered against L & L Lott Construction LLC and Andre Lott, FTF REO LLC respectfully requests that notice of any hearing under Rule 25(a)(3) of the Federal Rules of Civil Procedures be dispensed with in this proceeding.

15.     If the underlying Motion is granted, counsel for FTF Lending LLC will also serve as counsel for FTF REO LLC in the within action.

16.     FTF Lending LLC (a) is a limited liability company organized and existing by virtue of the laws of the State of Delaware, (b) maintains a principal place of business at 1300 East 9th Street, Suite 800, Cleveland, Ohio 44114, and (c) is composed of a single member named Fund That Flip, Inc., which is a corporation organized and existing by virtue of the laws of the State of Delaware, and which maintains a principal place of business at 1300 East 9th Street, Suite 800, Cleveland, Ohio 44114. Accordingly, for diversity purposes, FTF Lending is a citizen of the State of Delaware (state of organization of FTF Lending LLC and state of incorporation of sole member, Fund That Flip, Inc.) and the State of Ohio (state of principal place of business of FTF Lending LLC and state of principal place of business of sole member, Fund That Flip, Inc.).

17.     FTF REO LLC (a) is a limited liability company organized and existing by virtue of the laws of the State of Delaware, (b) maintains a principal place of business at 1300 East 9th Street, Suite 800, Cleveland, Ohio 44114, and (c) is composed of a single member named Fund That Flip, Inc., which is a corporation organized and existing by virtue of the laws of the State of Delaware, and which maintains a principal place of business at 1300 East 9th Street, Suite 800, Cleveland, Ohio 44114. Accordingly, for diversity purposes, FTF REO LLC is a citizen of the State of Delaware (state of organization of FTF REO LLC and state of incorporation of sole member, Fund That Flip, Inc.) and the State of Ohio (state of principal place of business of FTF REO LLC and state of principal place of business of sole member, Fund That Flip, Inc.).

18.     For diversity of jurisdiction purposes, the citizenship of Defendants, upon information and belief and as pled in the Complaint, is as follows:

| Defendant | State of Citizenship |
|-----------|---------------------|
| L & L Lott Construction LLC | Illinois |
| Andre Lott | Illinois |

(ECF Doc. 1 at 2-3.)

19.     Since FTF REO LLC is a citizen of the State of Delaware (state of organization and state of incorporation of sole member) the State of New York (state of principal place of business), and the State of Ohio (state of principal place of business) for diversity of jurisdiction purposes and since no Defendant, upon information and belief, is a citizen of the State of Delaware, State of New York or State of Ohio, there would continue to be complete diversity of jurisdiction between FTF REO and all Defendants.

20.     A proposed Order of Court is attached hereto as **Exhibit 4** for this Honorable Court's review and consideration.

WHEREFORE, for the foregoing reasons, FTF REO LLC respectfully requests an Order pursuant to Rules 24(a)(2) and 25(c) of the Federal Rules of Civil Procedure and 735 ILCS 5/15-1501(d)-(e) (1) permitting FTF REO LLC to intervene as a matter of right in this action to protect FTF REO LLC's interest under the Note, the Guaranty, and the Mortgage, (2) substituting FTF REO LLC in for FTF Lending LLC as the proper party Plaintiff and real party in interest in this action, and (3) granting FTF REO LLC all such further relief as this Honorable Court deems just and proper at law or in equity.

Respectfully submitted by:

*s/ Michael J. Palumbo*

MICHAEL J. PALUMBO, ESQUIRE
Illinois Attorney Registration #6324998
ANTHONY J. GINGO, ESQUIRE
Ohio Attorney Registration #0085669
Gingo Palumbo Law Group LLC
4700 Rockside Road, Suite 440
Independence, Ohio 44131
T: (216) 503-9512
F: (888) 827-0855
E: michael@gplawllc.com
E: anthony@gplawllc.com
*Counsel for Plaintiff and Movant-Intervenor Plaintiff*
*FTF REO, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies the following:

1.  On January 6, 2025, the *Motion of Movant-Intervenor Plaintiff FTF REO, LLC to Intervene and Substitute in for FTF Lending, LLC As Proper Party Plaintiff and Real Party in Interest Pursuant to Fed. R. Civ. P. 24(a)(2) and 25(c) and 735 ILCS 5/15-1501(d)-(e)* (the "**Pleading**") was filed via the CM/ECF Filing System for the United States District Court for the Northern District of Illinois (Chicago Division).

2.  The Parties appearing on the Notice of Electronic Filing, as noted below, may access the Pleading through the CM/ECF system:

    Michael J. Palumbo, Esquire, michael@gplawllc.com

3.  On January 6, 2025, a true and accurate copy of the Pleading was served by United States regular mail, postage prepaid, and by electronic mail upon the following:

    L & L Lott Construction LLC
    Attn: Andre Lott
    8506 South Aberdeen Street
    Chicago, Illinois 60620
    lottconstruction20@gmail.com

    Andre Lott
    8506 South Aberdeen Street
    Chicago, Illinois 60620
    lottconstruction20@gmail.com

                                        *s/ Michael J. Palumbo*
                                        _____
                                        Michael J. Palumbo, Esquire
                                        Anthony J. Gingo, Esquire
                                        *Counsel for Plaintiff and Movant-Intervenor Plaintiff FTF REO, LLC*

# PROMISSORY NOTE

$97,000.00                  Effective March 2, 2022

FOR VALUE RECEIVED, L & L Lott Construction LLC, an Illinois Limited Liability Company (the "Borrower"), having an address for purposes of notice and legal process at 8506 S. Aberdeen Street, Chicago, IL 60620, promises to pay to the order of FTF Lending, LLC, a Delaware Limited Liability Company (the "Lender"), having an address for purposes of notice and legal process at 1300 E. 9th St., Suite 800, Cleveland, OH 44114, or at such other place as may be designated in writing by the holder of this Note, the principal sum of $97,000.00 in lawful money of the United States of America, together with interest thereon to be computed from the date hereof at the Applicable Interest Rate or Default Rate (as applicable), and to be paid in accordance with the terms of this Note.

1.     BORROWER'S PROMISE TO PAY.

      1.1.     In return for a loan made by Lender to Borrower secured by that certain Mortgage (as hereinafter defined), Borrower promises to pay $97,000.00 (the "Principal" or "Total Available Funds"), plus interest and other sums due, to the order of Lender, in accordance with the terms of this Note. Borrower will make all payments under this Note in the form of a federal funds transfer to an account designated by Lender or in such other acceptable method of payment as may be designated by Lender. Borrower understands that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is hereinafter called the "Note Holder".

2.     INTEREST.

      2.1.     Absent an Event of Default (as hereinafter defined), interest under this Note shall be due and payable at the "Applicable Interest Rate" (as hereinafter defined) from the date the proceeds have been distributed to or on behalf of the Borrower through the Maturity Date, as the same may be extended, or through the earlier prepayment of the Loan in full. The term "Applicable Interest Rate", as used herein, shall mean an interest rate equal to 9.00% per annum. Interest for any month or fractional part thereof shall be calculated on the basis of a 30-day month and 360-day year, shall accrue and compound on a monthly basis, and shall be due and payable hereunder monthly.

      2.2.     Borrower shall pay interest at the Applicable Interest Rate upon the entire Principal amount regardless of whether any Disbursement (as that term is defined in the Escrow Agreement) is actually used by, or disbursed to, Borrower over the course of the Loan.

3.     PAYMENT TERMS.

      3.1.     Borrower agrees to pay sums under this Note in installments as follows:

           3.1.1.     On the date hereof in the sum of $727.50 representing interest only from the date of this Note through March 31, 2022; and

           3.1.2.     On the date hereof in the sum of $2,182.50 representing interest only from the date of this Note through June 30, 2022; and

3.1.3.  Commencing on July 1, 2022, interest shall accrue in accordance with the terms of this Note, and Borrower shall tender Borrower's first interest payment to Lender on August 1, 2022 and on the first day of each month thereafter ("Monthly Payment Date").

3.2.  All accrued and unpaid interest and the unpaid principal balance hereof are due and payable on the earlier to occur of (i) March 2, 2023 (the "Maturity Date"), or (ii) the date on which the Indebtedness (hereinafter defined) becomes immediately due and payable hereunder. Lender shall include in any final payoff figure the accrual of interest against the Total Released Funds.

3.3.  On the date hereof, Borrower shall pay to Lender an origination fee in the sum of $1,940.00 which amount shall be fully earned on the date of this Note.

3.4.  On the date hereof, Borrower shall pay to Lender all of Lender's costs and expenses related to this Loan, including, without limitation, Loan servicing fees, appraisal, policy of title insurance and endorsements, recordation of the Mortgage (defined below), Lender's reasonable attorneys' fees, broker's origination fee (if any), broker's processing fee (if any), and all other costs and expenses reflected on the settlement statement prepared by the title company serving as escrow agent for closing of the loan.

3.5.  Borrower shall have an option to extend the Maturity Date one (1) three (3) month period from the Maturity Date (each, an "Extension Term"), for a fee payable to Lender equal to 0.5% of the Principal, provided that (i) there is no ongoing Event of Default under this Note or the Loan Documents and Borrower has delivered written notice to Lender that they wish to exercise such extension at least 45 days prior to the first day of each Extension Term. Notwithstanding the foregoing, the Borrower's right to exercise each Extension Term shall be subject to the Lender's approval in their sole and absolute discretion. The Maturity Date established by each Extension Term shall be known as the "Extended Maturity Date".

3.6.  Borrower shall complete all repairs, replacements and other work listed on Exhibit A, if any, of this Note (collectively, the "Work"), which repairs shall be completed lien-free and in a good and workmanlike manner and in accordance with all applicable laws, rules, ordinances and regulations. Notwithstanding the foregoing, Lender shall have no obligation to provide additional funds to Borrower to pay for the completion of the Work.

4.  MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, FIXTURE FILING, AND SECURITY AGREEMENT.

4.1.  This Note is a secured by (a) a mortgage lien in the principal sum of $97,000.00 evidenced by a certain Mortgage, Assignment of Leases and Rents, Fixture Filing, and Security Agreement (the "Mortgage") of even date herewith given by Borrower to Lender encumbering certain real estate situated in the County of Cook, State of Illinois, and more commonly known as 1414 W. 73rd Place, Chicago, IL 60636 (individually and collectively, the "Property"), and (b) certain other instruments and agreements dated of even date herewith or executed pursuant to this transaction from time to time by Borrower, principal, surety, Guarantor, member, manager, endorser or any other parties for the benefit

2

of Lender (said documents and agreements and all other documents and agreements evidencing or securing the loan, are hereinafter referred to, collectively as the "Loan Documents"). All of the terms, covenants, conditions and agreements contained in the Mortgage are hereby incorporated herein and made a part hereof.

5.   **APPLICATION OF PAYMENTS.**

    5.1.   Each payment made by Borrower shall be applied as follows, which, after the occurrence and during the continuance of an Event of Default, shall be at the discretion of Lender:

        5.1.1.   First, to any costs of collection hereunder; and

        5.1.2.   Then, to any unpaid costs or balances of advances (excluding the original advance of the Principal) made by Lender in connection with the Mortgage and/or any of the Loan Documents and/or this Note and to any other amounts which may be overdue on account of any of the several terms, provisions, conditions or covenants contained in this Note, the Mortgage and the Loan Documents; and

        5.1.3.   Then, to late charges and any other fees or charges due hereunder if any; and

        5.1.4.   Then, to interest then due and payable hereunder (at the Default Rate, if applicable); and

        5.1.5.   The remainder to the Principal balance hereof.

    5.2.   Monthly installments of interest shall be paid when due, regardless of the prior acceptance by Lender of payments in excess of the regular monthly installment of interest.

    5.3.   The designation or allocation by Borrower of the disposition or allocation of any payments made will not be binding upon Lender and such payments shall instead be allocated in accordance with Section 5.1 herein; provided that, upon the occurrence and during the continuance of an Event of Default, Lender may allocate any and all such payments to interest, principal and other fees and charges due hereunder or to any one or more of them, in such amount, priorities and proportions as Lender may determine in its sole discretion in accordance with the terms hereof.

6.   **DEFAULT AND ACCELERATION.**

    6.1.   It is hereby expressly agreed that (A) the whole of the principal sum of this Note, (B) interest, default interest, late charges, fees and other sums, as provided in this Note, (C) all other monies agreed or provided to be paid by Borrower in this Note, the Mortgage or the Loan Documents, (D) all sums advanced pursuant to the Mortgage and/or the Loan Documents, and (E) all sums advanced and costs and expenses incurred by Lender in connection with the Indebtedness (as hereinafter defined) or any part thereof, any renewal, extension, or change of or substitution for the Indebtedness or any part thereof, or the acquisition or perfection of the security granted pursuant to the Mortgage and the other Loan Documents, whether made or incurred at the request of Borrower or Lender (the sums referred to in (A) through (E) above shall collectively be referred to as the "Indebtedness") shall, WITHOUT NOTICE (unless otherwise provided herein), become immediately due

3

and payable at the option of the Note Holder upon the happening of any of the following events (each, an "Event of Default"):

6.1.1.  Borrower fails to pay any amount due to Lender under this Note, within 10 days after the due date for such payment;

6.1.2.  Borrower fails to keep, observe or perform any other promise, condition or agreement contained in this Note, the Mortgage, the Loan Documents or any other documents described herein or delivered in connection herewith or is otherwise in default under the terms, covenants and conditions of this Note, the Mortgage and the Loan Documents, and such failure or default is not remedied within 30 days after written notice to Borrower thereof, provided, however, that if such failure or default is not capable of being cured or remedied within said 30 day period, then if Borrower fails to promptly commence to cure the same and thereafter diligently prosecute such cure to completion but in any event within 60 days after notice thereof;

6.1.3.  There is a material misstatement in any certificate and/or certification delivered in connection with this Note, the Mortgage, and other Loan Documents, or any representation, disclosure, warranty, statement, financial information, application and/or other instrument, record, documentation or paper made or furnished by or on behalf of Borrower in connection with this Note shall be materially misleading, untrue or incorrect as of the later of (i) the date hereof or (ii) when made;

6.1.4.  A receiver, liquidator or trustee shall be appointed for Borrower or for any of its property, an assignment shall be made for the benefit of creditors, Borrower or a member or manager of Borrower shall be adjudicated as bankrupt or insolvent, or any petition for bankruptcy, reorganization or arrangement pursuant to the Bankruptcy Reform Act of 1978 codified as 11 U.S.C. § 101 *et seq.*, and the regulations issued thereunder, both as hereafter modified from time to time (the "Federal Bankruptcy Code"), or any similar federal or state statute, shall be filed by or against Borrower, unless such appointment, assignment, adjudication or petition was involuntary, in which event only if the same is not discharged, stayed or dismissed within 60 days;

6.1.5.  A final judgment for the payment of money shall be rendered against Borrower or a member or manager of Borrower which would materially adversely affect Borrower's ability to make payments under this Note and Borrower or such member or manager shall not discharge the same or cause it to be discharged within 30 days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered within 10 days, or shall not thereafter secure a stay of execution pending such appeal;

6.1.6.  Borrower or a member or manager of Borrower shall have concealed, removed and/or permitted to be concealed or removed any substantial part of its property and/or assets with the intent to hinder, delay or defraud Lender of any of its property and/or assets which may be fraudulent under any federal or state bankruptcy, fraudulent conveyance or similar law now or hereafter enacted, or if

4

Borrower shall have made any transfer of any of its property and/or assets to or for the benefit of a creditor at a time when other creditors similarly situated have not been paid, or if Borrower shall have suffered or permitted to be suffered, while insolvent, any creditor to obtain a lien upon any of its property and/or assets through legal proceedings or distraint which is not vacated within 60 days from the date of entry thereof;

6.1.7. Borrower defaults under any other note, instrument, agreement, contract, pledge, mortgage or encumbrance evidencing and/or securing the Indebtedness or any other indebtedness of Borrower to Lender, now existing or hereinafter arising, and such event or occurrence is not remedied or cured within 10 days after notice thereof or an "event of default" (as defined in such other note, instrument, agreement, contract, pledge, mortgage or encumbrance) shall have occurred; or

6.1.8. If, without the written consent of Lender, the interest of any member or manager of Borrower is assigned or transferred, the Borrower is dissolved, or the manager withdraws, resigns or is replaced, unless due to the death or disability of the manager.

6.2. After the occurrence of an Event of Default, Lender may accept any payments from Borrower without prejudice to the rights and remedies of Lender provided herein or in the Mortgage or the Loan Documents.

7. DEFAULT INTEREST/LATE CHARGES.

7.1. The Default Rate (as hereinafter defined) shall remain in effect until any and all Events of Default shall have been cured. In addition, the Default Rate (as hereinafter defined) shall remain in effect during any period of default even upon the acceleration of the indebtedness evidence by this Note. The Default Rate (as hereinafter defined) shall be in effect at all times after the maturity of the Indebtedness (whether on the Maturity Date, by acceleration or otherwise). Upon acceleration or maturity, the Default Rate (as hereinafter defined) shall remain in effect until all sums due under this Note, the Mortgage and the Loan Documents shall have been paid in full. Any amount assessed or collected as interest under the Note will be limited to the maximum amount of interest allowed by applicable law. If interest collected under the Note exceeds the maximum lawful amount, then any amount will be applied first to the unpaid principal balance with any remainder refunded to the Borrower. This clause, however, shall not be construed as an agreement or privilege to extend the date of the payment of the Indebtedness, or as a waiver of any other right or remedy accruing to Lender by reason of the occurrence of any Event of Default.

7.2. Except for any payment of the Indebtedness after acceleration, if any payment (or part thereof) provided for herein shall not be made when due, a late charge of $0.06 for each $1.00 so overdue shall become immediately due and payable to the Note Holder as liquidated damages for failure to make prompt payment and the same shall be secured by the Mortgage. This fee is not a penalty, but a fee reasonably calculated to reimburse the Note Holder for administrative and staff time. Such charge shall be payable in any event no later than the due date of the next subsequent installment or, at the option of Note Holder, may be deducted from any deposits held by Lender as additional security for this

Note. Nothing herein is intended to or shall extend the due dates set forth for payments under this Note. Such late fee may be charged on any subsequent delinquent payment.

7.3.    Should the Indebtedness or any part thereof be collected at law or in equity, or in bankruptcy, receivership or any other court proceeding (whether at the trial or appellate level), or should this Note be placed in the hands of attorneys for collection, Borrower agrees to pay, in addition to the principal, any late payment charge and interest due and payable hereunder, all costs of collecting or attempting to collect the Indebtedness, including reasonable attorneys' fees and expenses and court costs, regardless of whether any legal proceeding is commenced hereunder, together with interest thereon at the Default Rate (as hereinafter defined) from the date paid or incurred by Note Holder until such expenses are paid by Note Holder.

7.4.    Notwithstanding anything to the contrary herein set forth, in no event shall any interest payable under this Note exceed the maximum interest rate permitted under law or the rate that could subject Lender to either civil or criminal liability as a result of being in excess of the maximum interest rate that Borrower is permitted by applicable law to contract or agree to pay. If by the terms of this Note, Borrower is at any time required or obligated to pay interest on the principal balance due hereunder at a rate in excess of such maximum rate, the interest rate hereinabove set forth, other charges, or the Default Rate (as hereinafter defined), as the case may be, shall be deemed to be immediately reduced to such maximum rate and all previous payments in excess of the maximum rate shall be deemed to have been payments in reduction of principal and not on account of the interest due hereunder. All sums paid or agreed to be paid to Lender for the use, forbearance, or detention of the Indebtedness, shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full stated term of this Note until payment in full so that the rate or amount of interest on account of the Indebtedness does not exceed the maximum lawful rate of interest from time to time in effect and applicable to the Indebtedness for so long as the Indebtedness is outstanding. Borrower agrees to an effective rate of interest that is the rate stated herein plus any additional rate of interest resulting from any other charges in the nature of interest paid or to be paid by or on behalf of Borrower, or any benefit received or to be received by Note Holder, in connection with this Note.

8.    WAIVERS.

8.1.    Borrower and all parties who may become eligible for the payment of all or any part of the Indebtedness, whether principal, surety, guarantor, pledgor, or endorser, hereby waive demand, notice of demand, presentment for payment, notice of intent to accelerate maturity, notice of acceleration of maturity, notice of dishonor, protest, notice of protest and non-payment and all other notices of any kind, except for notices expressly provided for in this Note.

8.2.    The liability of Borrower, any guarantor, pledgor or endorser shall be unconditional and shall not be in any manner affected by any indulgence whatsoever granted or consented to by the Note Holder, including, but not limited to any extension of time, renewal, waiver or other modification. No release of any security for the Indebtedness or extension of time for payment of this Note or any installment hereof, and no alteration, amendment or waiver of any provision of this Note, the Mortgage and other Loan Documents, or any other guaranty or instrument made by agreement of Lender or any other person or party shall release,

6

modify, amend, waive, extend, change, discharge, terminate or affect the liability of Borrower and any other person or entity who may become liable for the payment of all or any part of the Indebtedness under this Note.

8.3.    No notice to or demand on Borrower shall be deemed to be a waiver of the obligation of Borrower or of the right of Note Holder to take further action without further notice or demand on Borrower as provided for in this Note. Any failure of the Note Holder to exercise any right hereunder shall not be construed as a waiver of the right to exercise the same or any other right at any time and from time to time thereafter. Lender or any Note Holder may accept late payment, or partial payment, even though marked "payment in full" or containing words of similar import or other conditions, without waiving any of its rights. No amendment, modification or waiver of any provision of this Note nor consent to any departure by Borrower therefrom shall be effective, irrespective of any course of dealing, unless the same shall be in writing and signed by the Note Holder, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

8.4.    BORROWER AND EACH ENDORSER AGREE THAT ANY ACTION, SUIT OR PROCEEDING IN RESPECT OF OR ARISING OUT OF THIS NOTE MAY BE INITIATED AND PROSECUTED IN THE STATE OR FEDERAL COURTS, AS THE CASE MAY BE, LOCATED IN COOK COUNTY, ILLINOIS. BORROWER AND EACH ENDORSER CONSENT TO AND SUBMIT TO THE JURISDICTION OF SUCH COURTS OVER THE SUBJECT MATTER, WAIVE PERSONAL SERVICE OF ANY AND ALL PROCESS UPON IT AND CONSENT THAT ALL SUCH SERVICE OF PROCESS BE MADE BY REGISTERED OR CERTIFIED MAIL OR REPUTABLE OVERNIGHT DELIVERY SERVICE DIRECTED TO BORROWER OR SUCH ENDORSER AT ITS ADDRESS SET FORTH ABOVE OR TO ANY OTHER ADDRESS AS MAY APPEAR IN LENDER'S RECORDS AS THE ADDRESS OF BORROWER OR SUCH ENDORSER.

8.5.    IN ANY ACTION, SUIT OR PROCEEDING IN RESPECT OF OR ARISING OUT OF THIS NOTE, BORROWER AND EACH ENDORSER WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM, WHETHER IN CONTRACT, TORT OR OTHERWISE, RELATING DIRECTLY OR INDIRECTLY TO THE LOAN EVIDENCED BY THIS NOTE, THE APPLICATION FOR THE LOAN EVIDENCED BY THIS NOTE, THE MORTGAGE OR ANY OTHER LOAN DOCUMENT, OR ANY ACTS OR OMISSIONS OF NOTE HOLDER, ITS OFFICERS, EMPLOYEES, DIRECTORS OR AGENTS IN CONNECTION THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY BORROWER AND EACH ENDORSER AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE.

8.6.    BORROWER AND EACH ENDORSER ALSO WAIVE (I) THE RIGHT TO INTERPOSE ANY SET-OFF OR COUNTERCLAIM OF ANY NATURE OR DESCRIPTION, OTHER THAN A MANDATORY OR COMPULSORY COUNTERCLAIM, (II) ANY OBJECTION BASED ON FORUM NON CONVENIENS OR VENUE, AND (III) ANY CLAIM FOR CONSEQUENTIAL, PUNITIVE OR SPECIAL DAMAGES.

7

9.  PREPAYMENT.

9.1.  Borrower has the right to prepay the principal of this Note in whole or in part at any time before it is due. Such prepayment of Principal is known as a "Prepayment." When Borrower tenders a Prepayment, Borrower will tell Note Holder that it is doing so. Borrower may not make a Prepayment at any time that Borrower has not made all current monthly payments then due under the term of this Note.

9.2.  Borrower may make a Prepayment without paying a Prepayment charge. The Note Holder will apply the Prepayment to the outstanding Principal under this Note. However, Note Holder may first apply a Prepayment as provided in Section 5 hereof.

9.3.  Notwithstanding the foregoing, if Borrower chooses to make a Prepayment of the loan prior to the date which is 3 months from the date of this Note, Borrower will still be responsible to Note Holder for all interest due to Note Holder under the terms of this Note up and through said 3 month period.

10.  NOTICES.

10.1.  All notices to be given pursuant to this Note shall be in writing and sufficient if given by personal in-hand service, by reputable overnight delivery service, or by being mailed postage prepaid, by registered or certified mail, to such party's address first herein above set forth, along with a copy to Lender's attorney Samantha L. Licker, Esq., 1300 E. 9th St., Suite 800, Cleveland, OH 44114. Notices by registered or certified mail shall be considered delivered and become effective upon the earlier of receipt or 3 days after mailing thereof. Notices by personal hand delivery shall be considered delivered and become effective on the day delivered or refused. Notices by overnight delivery service shall be considered delivered and become effective on the next business day after being sent. Notices may be given by a party's attorneys or agents with the same force and effect as though given by such party.

11.  MISCELLANEOUS.

11.1.  Time shall be of the essence with respect to all provisions of this Note.

11.2.  Borrower represents that Borrower has full power, authority and legal right to execute and deliver this Note, and that this Note constitutes the valid and binding obligations of Borrower.

11.3.  Wherever pursuant to this Note it is provided that Borrower pay any costs and expenses, such costs and expenses shall include, without limitation, reasonable legal fees and disbursements of Note Holder with respect to retained firms and the reimbursement of the expenses of Note Holder's in-house staff or counsel. Borrower shall pay to Note Holder on demand any and all expenses, including reasonable legal expenses and attorneys' fees, incurred or paid by Lender in enforcing this Note.

11.4.  This Note cannot be changed, modified, amended, waived, extended, discharged or terminated orally or by estoppel or waiver, regardless of any claimed partial performance

8

referable thereto, or by any alleged oral modification or by any act or failure to act on the part of Borrower or Note Holder.

11.5.    The agreements contained herein shall remain in full force and effect, notwithstanding any changes in the individuals or entities comprising Borrower, and the term Borrower, as used herein, shall include any alternate or successor entity, but any predecessor entity, and its partners, members or managers, as the case may be, shall not thereby be released from any liability. Nothing in the foregoing shall be construed as consent to, or a waiver of, any prohibition or restriction on transfers of interests in Borrower which may be set forth in this Note, the Mortgage or the Loan Documents.

11.6.    Titles of articles and sections are for convenience only and in no way define, limit, amplify or describe the scope or intent of any provision hereof.

11.7.    If any paragraph, clause or provision of this Note is construed or interpreted by a court of competent jurisdiction to be void, invalid or unenforceable, such voidness, invalidity or unenforceability will not affect the remaining paragraphs, clauses and provisions of this Note, which shall nevertheless be binding upon the parties hereto with the same effect as though the void or unenforceable part had been severed and deleted.

11.8.    If more than one person is named in this Note as Borrower, each obligation of Borrower shall be the joint and several obligation of such party or entity.

11.9.    The terms and provision of this Note shall be binding upon and inure to the benefit of Borrower and Note Holder and their respective heirs, executors, legal representatives, successors, successors-in-title, and assigns, whether by voluntary action of the parties or by operation of law. As used herein, the terms Borrower and Lender shall be deemed to include their respective heirs, executors, legal representative, successors, successors-in-title, and assigns, whether by voluntary action of the parties or by operation of law.

11.10.    All the terms and words used in this Note, regardless of the number and gender in which they are used, shall be deemed and construed to include any other number, singular or plural, and any other gender, masculine, feminine, or neuter, as the context or sense of this Note or any paragraph or clause herein may require, the same as if such word had been fully and properly written in the correct number and gender.

11.11.    Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the Loan Documents.

11.12.    This Note shall be governed by and construed in accordance with the laws of the State of Illinois.

12.    STATE SPECIFIC PROVISION(S).

12.1.    From and after the occurrence of an Event of Default, regardless of whether or not there has been a notice of default issued by the Note Holder, interest shall accrue on the outstanding Principal Sum, and shall be payable, at a rate equal to 24%, which shall not exceed the maximum interest rate allowed by law (the "Default Rate"). Should the Default Rate named herein exceed the maximum interest rate allowed by law then it is the parties

9

intention that the Default Rate shall be calculated at the maximum interest rate allowed by law.

12.2.    <u>Warrant of Attorney to Confess Judgment</u>. Borrower irrevocably authorizes and empowers any attorney-at-law, including an attorney hired by Lender, to appear in any court of record and to confess judgment against Borrower for the unpaid amount of the Note as evidenced by an affidavit signed by an officer of Lender setting forth the amount then due, including attorneys' fees plus costs of suit, and to release all errors and waive all rights of appeal. If a copy of this Note, verified by an affidavit, shall have been filed in the proceeding, it will not be necessary to file the original as a warrant of attorney. Borrower waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect. No single exercise of the foregoing warrant and power to confess judgment shall be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable or void; but the power shall continue undiminished and may be exercised from time to time as Lender may elect until all amounts owing on this Note have been paid in full. Borrower waives any conflict of interest that an attorney hired by Lender may have in acting on behalf of Borrower in confessing judgment against Borrower while such attorney is retained by Lender. Borrower expressly consents to such confessing attorney acting for Borrower in confessing judgment, and consents to Lender paying such confessing attorney a legal fee or allowing such attorney's fees to be paid from any proceeds of collection of the Note. If Borrower is jointly and severally liable under the Loan Documents, then this warrant of attorney to confess judgment is a joint and several warrant of attorney.

12.3.    <u>The Following Notice is Required by Illinois Law.</u> Unless Borrower provides lender with evidence of the insurance coverage required by Borrower's agreement with Lender, Lender may purchase insurance at Borrower's expense to protect Lender's interest in the collateral. This insurance may, but not need, protect Borrower's interests. The coverage that Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the collateral. Borrower may late cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained insurance as required by Borrower's agreement with Lender. If Lender purchases insurance for the collateral, Borrower will be responsible for the costs of that insurance, including interest and any other charge Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The cost of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on Borrower's own.

[END OF PAGE – SIGNATURE PAGE TO FOLLOW]

L & L Lott Construction LLC, an Illinois Limited Liability Company
FTF_133871_56780

IN WITNESS WHEREOF, the Borrower, by and through the Borrower's authorized signatory, has executed and delivered this Promissory Note to the Lender on March 2, 2022.

> **NOTICE: FOR THIS NOTICE "YOU" MEANS THE BORROWER AND "CREDITOR" AND "HIS" MEANS LENDER.**
>
> **WARNING – BY SIGNING THIS PAPER YOU GIVE UP YOUR RIGHT TO NOTICE AND COURT TRIAL. IF YOU DO NOT PAY ON TIME A COURT JUDGMENT MAY BE TAKEN AGAINST YOU WITHOUT YOUR PRIOR KNOWLEDGE AND THE POWERS OF A COURT CAN BE USED TO COLLECT FROM YOU REGARDLESS OF ANY CLAIMS YOU MAY HAVE AGAINST THE CREDITOR WHETHER FOR RETURNED GOODS, FAULTY GOODS, FAILURE ON HIS PART TO COMPLY WITH THE AGREEMENT, OR OTHER CAUSE.**

BORROWER:
L & L Lott Construction LLC, an Illinois Limited
Liability Company

By:    Andre Lott
Its:    Sole Member and Manager

NOTARIAL CERTIFICATE

STATE OF ___ILLINOIS___ )
                     ) SS:
COUNTY OF ___Cook___ )

An oath was administered to the signer with regard to the notarial act.

The foregoing Instrument was sworn and subscribed before me this ___2ND___ day of ___March___, 2022 by Andre Lott, the Sole Member and Manager of L & L Lott Construction LLC, an Illinois Limited Liability Company.

OFFICIAL SEAL
NOTARIALION JVM
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 03/14/2022

Notary Public
State of ___ILLINOIS___

11

L & L Lott Construction LLC, an Illinois Limited Liability Company
FTF_133871_56780

ENDORSEMENT AND ALLONGE

THIS ENDORSEMENT AND ALLONGE IS TO BE ATTACHED TO AND MADE AN INTEGRAL
PART OF THE FOLLOWING:

| | |
|---|---|
| Instrument | Promissory Note |
| Date | March 2, 2022 |
| Borrower/Maker | L & L Lott Construction LLC, an Illinois limited liability company |
| Original Payee | FTF Lending, LLC, a Delaware limited liability company |
| Original Principal Amount | $97,000.00 |

PAY TO THE ORDER OF FTF REO, LLC, A DELAWARE LIMITED LIABILITY COMPANY,
WITHOUT RECOURSE AND WITHOUT REPRESENTATION OR WARRANTY, EXPRESS, IMPLIED,
OR BY OPERATION OF LAW, OF ANY KIND AND NATURE WHATSOEVER.

The effective date of this Instrument is November 12, 2024.

FTF LENDING, LLC,
a Delaware limited liability company

By: Cindy Funk
Its: Vice President of Account Servicing

Borrower: L & L Lott Construction LLC
Property: 1414 West 73rd Place, Chicago, Illinois 60636

# GUARANTY

THIS GUARANTY (the "Guaranty") is made and entered on March 2, 2022, by and between Andre Lott, an individual and resident of the State of Illinois (the "Guarantor"), having an address for purposes of notice and legal process at 8506 S. Aberdeen Street, Chicago, Illinois 60620, and FTF Lending, LLC, a Delaware Limited Liability Company (the "Lender" or "Mortgagee"), having an address for purposes of notice and legal process at 1300 E. 9th St., Suite 800, Cleveland, OH 44114.

## WITNESSETH:

WHEREAS, Lender has agreed to make a loan to L & L Lott Construction LLC, an Illinois Limited Liability Company (the "Borrower" or "Mortgagor"), having an address for purposes of notices and legal process at 8506 S. Aberdeen Street, Chicago, IL 60620; and

WHEREAS, the loan is evidenced and secured by (a) that certain promissory note (the "Note"), of even date herewith, in the principal amount of $97,000.00 executed by Borrower in favor of Lender, (b) that certain Mortgage, Assignment of Leases and Rents, Fixture Filing, and Security Agreement (the "Mortgage"), of even date herewith, executed by Mortgagor in favor of Mortgagee encumbering (among other things) that certain real property situated in the County of Cook, State of Illinois, and more commonly known as 1414 W. 73rd Place, Chicago, IL 60636 (individually and collectively, the "Property"), and (c) certain other Loan Documents (as hereinafter defined). The Note, Mortgage, and all other documents now or hereafter executed and delivered by Borrower in connection with the loan are hereinafter collectively referred to as the "Loan Documents"; and

WHEREAS, Guarantor will materially benefit from Lender's agreement to make the loan to Borrower; and

WHEREAS, Lender has required as a condition to the making of the loan that Guarantor shall have executed and delivered this Guaranty, guaranteeing to Lender the payment and performance by Borrower of all of Borrower's obligations under the Loan Documents, as more fully set forth in this Guaranty, and has agreed to make the loan partially in reliance on the execution and delivery of this Guaranty; and

NOW, THEREFORE, in consideration of the premises and for other good and valuable consideration received and to induce Lender to make such loan, Guarantor does hereby covenant, agree, represent and warrant to Lender as follows:

1. **REPRESENTATIONS AND WARRANTIES OF GUARANTOR.**

    1.1. Guarantor hereby represents and warrants that:
        1.1.1. Guarantor has the power to enter into and perform this Guaranty; and

        1.1.2. neither this Guaranty, the execution, delivery and performance hereof, the performance of the agreements herein contained nor the consummation of the transactions herein contemplated will violate:

            1.1.2.1. any statute, ordinance, regulation, court order or decree of any governmental authority or agency, or

1.1.2.2. any agreement to which Guarantor is subject or by which Guarantor is bound; and

1.1.3.   this Guaranty constitutes a valid and binding obligation of Guarantor enforceable against Guarantor in accordance with its terms; and

1.1.4.   all governmental approvals and consents required to be obtained to authorize the issuance of this Guaranty have been duly and validly issued and obtained.

2.      AGREEMENT TO GUARANTEE.
       2.1    Obligations Guaranteed.

          2.1.1    Guarantor hereby irrevocably and unconditionally guarantees to Lender the full and prompt:

                2.1.1.1  payment when due of the principal, interest and other sums due with respect to the loan, whether now existing or hereafter incurred (including any increase in the indebtedness under the Loan Documents), and all other obligations whenever incurred by Borrower to Lender with respect to the loan and under or through the Loan Documents, when and as the same shall become due and payable, whether at the stated maturity thereof, by acceleration, or otherwise; and

                2.1.1.2  payment and performance of all other obligations of Borrower under the Loan Documents, including, without limitation, the full and indefeasible payment and performance when due of all now existing or future indebtedness, obligations or liabilities of Borrower to Lender, howsoever arising, whether direct or indirect, absolute or contingent, secured or unsecured, whether arising under any of the Loan Documents as now written or as the same may be amended or supplemented hereafter, or by operation of law or otherwise. Payments by Guarantor shall be made upon demand in the lawful money of the United States of America.

          2.1.2    Each and every default in the payment of the principal or interest or any other sum due under, or borrowing in accordance with, the Loan Documents shall give rise to a separate cause of action hereunder, and separate suits may be brought hereunder as each cause of action arises.

          2.1.3    Guarantor further agrees that this Guaranty constitutes an absolute, unconditional, present and continuing GUARANTEE OF PAYMENT AND PERFORMANCE AND NOT OF COLLECTION, and Guarantor waives any right to require that any resort be had by Lender to:

                2.1.3.1  any security (including, without limitation, the Collateral) held by Lender or for its benefit for payment of the principal, interest or any other sums due under the Loan Documents; or

2

2.1.3.2 Lender's rights against any other person including Borrower or any other guarantor of the loan; or

2.1.3.3 any other right or remedy available to Lender by contract, applicable law or otherwise.

It is the intent of this Guaranty that Lender shall have the right to resort to Guarantor without resorting to any remedy against Borrower and without demand by it, as though Guarantor is primarily liable for the repayment of the indebtedness.

2.2 <u>Obligations Unconditional</u>. The obligations of Guarantor under this Guaranty shall be absolute and unconditional and shall remain in full force and effect until the entire principal, interest and all other sums due under the Loan Documents have been paid in full (subject to the provisions of Section 2.7 hereof) and all costs and expenses, if any, referred to in Section 2.4 hereof shall have been paid in full. To the extent permitted by law, the obligations of Guarantor hereunder shall not be affected, modified, released, or impaired by any state of facts or the happening from time to time of any event, including, without limitation, any of the following whether or not with notice to, or the consent of, Guarantor:

2.2.1 the invalidity, irregularity, illegality or unenforceability of, or any defect in, the Loan Documents; or

2.2.2 any present or future law or order of any government (<u>de jure</u> or <u>de facto</u>) or of any agency thereof purporting to reduce the amount of the loan or otherwise amend or affect the Loan Documents; or

2.2.3 the compromise, settlement, release, extension, indulgence, change, modification (including without limitation, a change in the maximum amount which may be borrowed or in the maximum interest rate) or the termination of any or all of the obligations, covenants or agreements of Borrower or any other guarantor, other than the payment in full of (i) the entire principal, interest and all other sums during under the Loan Documents (subject to the provisions of Section 2.7 hereof) and (ii) all costs and expenses set forth in Section 2.4 hereof; or

2.2.4 the failure to give notice to Guarantor of the occurrence of any default or Event of Default under the terms and provisions of the Loan Documents; or

2.2.5 the actual or purported assignment of any of the obligations, covenants and agreements contained in this Guaranty; or

2.2.6 the waiver of the payment, performance or observance by Borrower or any other guarantor of any or all of the obligations, conditions, covenants or agreements contained in the Loan Documents or any other guaranty; or

2.2.7 the receipt and acceptance by Lender of notes, checks, or other instruments for the payment of money made by Borrower and any extensions or renewals thereof; or

2.2.8 the extension of the time for payment of the principal, interest or any other sum due under the Loan Documents; or

3

2.2.9   the modification or amendment (whether material or otherwise but including, without limitation, any increase in the principal amount of the loan or the rate of interest) of any term, duty, obligation, covenant or agreement set forth in the Loan Documents; or

2.2.10   the taking of, or the omission to take, any action referred to in the Loan Documents; or

2.2.11   any failure, omission, delay or lack of action on the part of Lender or any other person to enforce, assert or exercise any right, power or remedy conferred upon it under the Loan Documents; or

2.2.12   the voluntary commencement or the existence of an involuntary case or proceeding under the United States Bankruptcy Code or under any other (state or foreign) bankruptcy, insolvency or similar statute affecting Borrower; the liquidation, dissolution, merger, consolidation, sale or other disposition of all or substantially all the assets of Borrower; the marshaling of assets and liabilities; any receivership, insolvency, assignment for the benefit of creditors, reorganization, arrangement, composition with creditors or readjustment of debts; any other similar events or proceedings affecting Borrower; or any allegation or contest of the validity of this Guaranty or the Loan Documents in any such proceeding; it being specifically understood, consented and agreed to that this Guaranty shall remain and continue in full force and effect and shall be enforceable against Guarantor to the same extent and with the same force and effect as if such events and proceedings had not been instituted; and it is the intent and purpose of this Guaranty that Guarantor shall and does hereby waive all rights and benefits which might accrue to Guarantor by reason of any such proceedings; or

2.2.13   any impairment of any security or other collateral pledged or granted by Borrower in connection with the loan, whether by negligence or otherwise (it being understood and agreed that there is no obligation on the part of Lender to preserve, protect, defend or maintain in any way any such security or collateral); or

2.2.14   any impairment, whether by negligence or otherwise, of any rights of subrogation of Guarantor; or

2.2.15   the release, substitution or replacement whether or not in accordance with the terms of the Loan Documents of any property subject thereto or any redelivery, repossession, surrender or destruction of any such property, in whole or in part; or

2.2.16   any limitation on the liability or obligations of Borrower under the Loan Documents or any termination, cancellation, frustration, invalidity or unenforceability, in whole or in part, of the Loan Documents; or

2.2.17   any failure of Lender to mitigate damages resulting from any default by Borrower under the Loan Documents.

4

2.3   No Waiver of Set-Off; No Right to Jury Trial.  No act of commission or omission of any kind or at any time made by or upon the part of Lender, or its successors and assigns, in respect of any matter whatsoever shall in any way impair the rights of Lender, or any such successor or assign, to enforce any right, power or benefit under this Guaranty and no set-off, counterclaim (other than a mandatory or compulsory counterclaim), reduction or diminution of any obligation, or any defense of any kind or nature which Guarantor has or may have against Lender, or any assignee or successor thereof, shall be available hereunder to Guarantor in respect of any matter arising out of this Guaranty.   GUARANTOR WAIVES TRIAL BY JURY IN ANY ACTION, SUIT OR PROCEEDING IN RESPECT OF, OR ARISING OUT OF, THIS GUARANTY OR THE OBLIGATIONS OF GUARANTOR HEREUNDER.  THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY GUARANTOR AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE.

2.4   Waiver of Notice; Expenses.

2.4.1   Guarantor hereby expressly waives notice from Lender of its acceptance and reliance on this Guaranty. Guarantor agrees to pay all costs, fees, commissions and expenses (including, without limitation, all reasonable attorneys' fees) which may be incurred by Lender in enforcing or attempting to enforce this Guaranty, whether the same shall be enforced by suit or otherwise.

2.4.2   Guarantor hereby waives presentment of any instrument, demand of payment, protest and notice of non-payment or protest thereof.

2.5   Restriction on the Guarantor.   Guarantor represents and warrants that all financial information provided by Guarantor to Lender is true, accurate and complete in all material respects. Guarantor agrees not to dispose of all or substantially all of his property, business or assets after the execution and delivery of this Guaranty without fair consideration.

2.6   Waiver of Subrogation.   Guarantor hereby waives any and all rights and claims of Guarantor against Borrower or any of Borrower's property in connection with claims arising out of any payment made by Guarantor pursuant to this Guaranty including but not limited to claims arising pursuant to rights of subrogation.

2.7   Preferences, Etc.  If after receipt of any payment of, or proceeds applied to the payment of, all or any part of Borrower's indebtedness guaranteed hereby, Lender is for any reason compelled to surrender such payment or proceeds to any person, because such payment or application of proceeds is invalidated, declared fraudulent, set aside, determined to be void or voidable as a preference, impermissible set-off, or a diversion of trust funds, or for any other reason, then the obligations guaranteed hereby or part thereof intended to be satisfied shall be revived and continue and this Guaranty shall continue in full force as if such payment or proceeds had not been received by Lender and Guarantor shall be liable to pay to Lender, and hereby does indemnify Lender and hold Lender harmless for, the amount of such payment or proceeds surrendered. The provisions of this paragraph shall survive the termination of this Guaranty.

3.     NOTICE OF SERVICE OF PROCESS PLEADINGS AND OTHER PAPERS.

    3.1     Service of Process and Notice. All notices to be given hereunder shall be deemed sufficiently served for all purposes hereunder if:

        3.1.1     mailed to the respective parties with the United States Postal Service by certified mail, return receipt requested, postage prepaid; or

        3.1.2     personally served on the respective parties; or

        3.1.3     sent prepaid by Federal Express, United Parcel Service or any other recognized overnight courier service for next business day delivery to the respective parties.

    3.2     Any notice which, under the provisions of this Guaranty or otherwise, is required or permitted to be given shall be deemed to be given and effective (a) upon delivery of refusal of delivery, if delivered by hand, (b) upon the earlier of receipt or three (3) days after mailing, if mailed with the United States Postal Service by certified mail, return receipt requested, postage prepaid, or (c) on the next business day after being sent, if sent by Federal Express, United Parcel Service, or any other recognized overnight courier service for next business day delivery.

    3.3     Any notice required to be sent to Guarantor shall be sent to Guarantor at the address first set forth above or to such other address as Guarantor shall specify by delivery of notice as aforesaid to Lender. Any notice required to be sent to Lender shall be sent to Lender at the address first set forth above or to such other address as Lender shall specify to Guarantor, with a copy to 1300 E. 9th St., Suite 800, Cleveland, OH 44114.

    3.4     Consent of Jurisdiction. Guarantor irrevocably and unconditionally:

        3.4.1     agrees that any suit, action or other legal proceeding arising out of this Guaranty may be brought in the courts of record of the State of Illinois or any Federal court in Illinois, and that such courts shall have in personam jurisdiction of Guarantor in any such suit, action or other legal proceeding; and

        3.4.2     consents to the jurisdiction of each such court in any such suit, action or other legal proceeding; and

        3.4.3     waives any objection which it may have to the laying of venue of any such suit, action or proceeding in any of such courts.

4.     MISCELLANEOUS.

    4.1.     Remedies Not Exclusive. No remedy herein conferred upon or reserved to Lender is intended to be exclusive of any other available remedy given under this Guaranty or hereafter existing at law or in equity. No delay or failure to exercise any right or power accruing upon any default, omission or failure of performance hereunder shall impair any such right or power or shall be construed to be a waiver thereof, but any such right and power may be exercised from time to time and as often as may be deemed expedient. In the event any provision contained in this Guaranty should be breached by Guarantor and thereafter duly waived by the Lender, such waiver shall be limited to the particular breach so waived and shall not be deemed to waive any other breach hereunder. No waiver,

6

amendment, release or modification of this Guaranty shall be established by conduct, custom, or course of dealing, but solely by an instrument in writing duly executed by Lender and Guarantor.

4.2. Severability. The invalidity or unenforceability of any one or more phrases, sentences, clauses or sections of this Guaranty shall not affect the validity or enforceability of the remaining portions of this Guaranty, or any part thereof.

4.3. Applicable Law. This Guaranty shall be governed by and construed in accordance with the laws of the State of Illinois without regard to conflicts of laws principles.

4.4. Successors and Assigns. This Guaranty shall be binding upon and be enforceable against Guarantor and their respective heirs and legal representatives and shall inure to the benefit of Lender, its successors or assigns.

4.5. Gender. As used in this Guaranty, the masculine shall include the feminine as the context may require.

4.6. Entire Agreement. This Guaranty sets forth the entire agreement and obligations of Guarantor and Lender and supersedes any and all other understandings (whether oral or written) between them.

5. STATE SPECIFIC PROVISION(S).

5.1. **Warrant of Attorney to Confess Judgment.** **Guarantor irrevocably authorizes and empowers any attorney-at-law, including an attorney hired by Lender, to appear in any court of record and to confess judgment against Guarantor for the unpaid amount of the Guaranty as evidenced by an affidavit signed by an officer of Lender setting forth the amount then due, including attorneys' fees plus costs of suit, and to release all errors and waive all rights of appeal. If a copy of this Guaranty, verified by an affidavit, shall have been filed in the proceeding, it will not be necessary to file the original as a warrant of attorney. Guarantor waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect. No single exercise of the foregoing warrant and power to confess judgment shall be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable or void; but the power shall continue undiminished and may be exercised from time to time as Lender may elect until all amounts owing on this Guaranty have been paid in full. Guarantor waives any conflict of interest that an attorney hired by Lender may have in acting on behalf of Guarantor in confessing judgment against Guarantor while such attorney is retained by Lender. Guarantor expressly consents to such confessing attorney acting for Guarantor in confessing judgment, and consents to Lender paying such confessing attorney a legal fee or allowing such attorney's fees to be paid from any proceeds of collection of the Guaranty. If Guarantor is jointly and severally liable under the Loan Documents, then this warrant of attorney to confess judgment is a joint and several warrant of attorney.**

Initials: _____

7

5.2. <u>The Following Notice is Required by Illinois Law.</u> Unless Borrower provides lender with evidence of the insurance coverage required by Borrower's agreement with Lender, Lender may purchase insurance at Borrower's expense to protect Lender's interest in the collateral. This insurance may, but not need, protect Borrower's interests. The coverage that Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the collateral. Borrower may late cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained insurance as required by Borrower's agreement with Lender. If Lender purchases insurance for the collateral, Borrower will be responsible for the costs of that insurance, including interest and any other charge Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The cost of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on Borrower's own.

Initials: _____

[END OF PAGE – SIGNATURE PAGE TO FOLLOW]

L & L Lott Construction LLC, an Illinois Limited Liability Company
FTP_133871_56780

IN WITNESS WHEREOF, the Guarantor, in the Guarantor's individual capacity, has executed and delivered this Guaranty to the Lender on March 2, 2022.

---

**NOTICE: FOR THIS NOTICE "YOU" MEANS THE GUARANTOR AND "CREDITOR" AND "HIS" MEANS LENDER.**

**WARNING – BY SIGNING THIS PAPER YOU GIVE UP YOUR RIGHT TO NOTICE AND COURT TRIAL. IF YOU DO NOT PAY ON TIME A COURT JUDGMENT MAY BE TAKEN AGAINST YOU WITHOUT YOUR PRIOR KNOWLEDGE AND THE POWERS OF A COURT CAN BE USED TO COLLECT FROM YOU REGARDLESS OF ANY CLAIMS YOU MAY HAVE AGAINST THE CREDITOR WHETHER FOR RETURNED GOODS, FAULTY GOODS, FAILURE ON HIS PART TO COMPLY WITH THE AGREEMENT, OR OTHER CAUSE.**

---

GUARANTOR:
Andre Lott
an individual and resident of the State of Illinois

By:     Andre Lott

---

## NOTARIAL CERTIFICATE

STATE OF ___ILLINOIS___ )
                                           ) SS:
COUNTY OF ___Cook___ )

An oath was administered to the signer with regard to the notarial act.

The foregoing Instrument was sworn and subscribed before me this _2ND_ day of MARCH, 2022 by Andre Lott.

OFFICIAL SEAL
JON JIM
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 03/14/2022

Notary Public
State of _ILLINOIS_

9

L & L Lott Construction LLC, an Illinois Limited Liability Company
FTF_133871_56780

<u>ASSIGNMENT OF SECURITY DOCUMENTS</u>

**FTF LENDING, LLC, a Delaware limited liability company** (the "**Assignor**"), for good and valuable consideration, the receipt and sufficiency of which are acknowledged, hereby sells, transfers, assigns, delivers, sets-over and conveys to **FTF REO, LLC, a Delaware limited liability company** (the "**Assignee**"), without recourse and without representation or warranty, express, implied, or by operation of law, of any kind and nature whatsoever by the Assignor, all right, title and interest of the Assignor in and to the loan identified on **Exhibit A** attached hereto (the "**Loan**"), including, without limitation all of Assignor's right, title and interest in any guaranties, pledge agreements, collateral assignment agreements, non-owner occupancy affidavits, environmental indemnity agreements, certificates of borrower, security agreements, loan participation interests, indemnities, claims, collateral, insurance policies, certificates of deposit, letters of credit, escrow accounts, performance bonds, demands, causes of action and any other collateral arising out of and/or executed and/or delivered in or to or with respect to the Loan, together with any other documents or instruments executed and/or delivered in connection with or otherwise related to the Loan.

This effective date of this Instrument is November 12, 2024.

ASSIGNOR:
FTF LENDING, LLC,
a Delaware limited liability company


By:     Cindy Funk
Its:     Vice President of Account Servicing

Borrower: L & L Lott Construction LLC
Property: 1414 West 73rd Place, Chicago, Illinois 60636

EXHIBIT A

That certain commercial loan dated March 2, 2022 in the stated original principal amount of $97,000.00 executed by L & L Lott Construction LLC, an Illinois limited liability company, in favor of FTF Lending, LLC, a Delaware limited liability company.

# Illinois Anti-Predatory Lending Database Program

## Certificate of Exemption

Doc#. 2207406329 Fee: $98.00
Karen A. Yarbrough
Cook County Clerk
Date: 03/15/2022 02:22 PM Pg: 1 of 35



**Report Mortgage Fraud
844-768-1713**

---

The property identified as: **PIN:** 20-29-122-021

**Address:**
**Street:** 1414 W. 73rd Place
**Street line 2:**
**City:** Chicago    **State:** IL    **ZIP Code:** 60636

**Lender:** FTF Lending, LLC

**Borrower:** L & L Lott Construction LLC

**Loan / Mortgage Amount:** $97,000.00

This property is located within the program area and is exempt from the requirements of 765 ILCS 77/70 et seq. because it is not owner-occupied.

**Certificate number:** CB2EF23D-1C59-4026-8B7E-1D0388F1C195    **Execution date:** 3/2/2022

L & L Lott Construction LLC, an Illinois Limited Liability Company
(Borrower and Mortgagor)

to

FTF Lending, LLC, a Delaware Limited Liability Company
(Lender and Mortgagee)

# MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, FIXTURE FILING, AND SECURITY AGREEMENT

Date
March 2, 2022

Property

Address | Parcel ID | County
1414 W. 73rd Place | 20-29-122-021 | Cook
Chicago, IL 60636

PREPARED BY AND RETURN TO:
Samantha L. Licker, Esquire
Fund That Flip
1300 E 9th St STE 800, Cleveland, OH 44114

Mortgagor: L & L Lott Construction LLC, an Illinois Limited Liability Company
Loan:FTF_133871_56780

## <u>MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, FIXTURE FILING, AND SECURITY AGREEMENT</u>

### THE MAXIMUM PRINCIPAL AMOUNT SECURED HEREUNDER IS $97,000.00.

THIS MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, FIXTURE FILING, AND SECURITY AGREEMENT (the "Mortgage") is made and entered on March 2, 2022, by and between L & L Lott Construction LLC, an Illinois Limited Liability Company ("Mortgagor" and sometimes "Borrower"), having its principal place of business and for purposes of notice and legal process at 8506 S. Aberdeen Street, Chicago, IL 60620, and FTF Lending, LLC, a Delaware Limited Liability Company ("Mortgagee" and sometimes "Lender"), having a principal place of business and for purposes of notice and legal process at 1300 E 9th St STE 800, Cleveland, OH 44114.

### WITNESSETH:

To secure the payment of an indebtedness in the principal sum of $97,000.00, lawful money of the United States of America, to be paid with interest according to a certain promissory note dated of even date herewith made by Mortgagor to Mortgagee (the promissory note together with all extensions, renewals or modifications thereof being hereinafter collectively called the "Note") (said indebtedness, interest and all other sums due hereunder and under the Note being collectively called the "Debt"), Mortgagor has mortgaged, given, granted, bargained, sold, conveyed, assigned, transferred, pledged, set over, and hypothecated and by these presents does mortgage, give, grant, bargain, sell, convey, assign, transfer, confirm, pledge, sets over and hypothecate unto Mortgagee that certain real property situated in the County of Cook, State of Illinois, more commonly known 1414 W. 73rd Place, Chicago, IL 60636, and more fully described in <u>Exhibit A</u> attached hereto (individually and collectively, the "Premises") and the buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter located thereon (the "Improvements"); and

TOGETHER WITH: all right, title, interest and estate of Mortgagor now owned, or hereafter acquired, in and to the following property, rights, interests and estates (the Premises, the Improvements together with the following property, rights, interests and estates being hereinafter collectively referred to as the "Mortgaged Property"):

a.    all easements, rights-of-way, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances of any nature whatsoever, in any way belonging, relating or pertaining to the Premises and the Improvements and the reversion and reversions, remainder and remainders, and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the

1

Premises, to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtesy and rights of curtesy, property, possession, claim and demand whatsoever, both at law and in equity, of Mortgagor of, in and to the Premises and the Improvements and every part and parcel thereof, with the appurtenances thereto; and

b.    all machinery, equipment, fixtures (including but not limited to all heating, air conditioning, plumbing, lighting, communications and elevator fixtures) and other property of every kind and nature whatsoever owned by Mortgagor, or in which Mortgagor has or shall have an interest, now or hereafter located upon the Premises and the Improvements, or appurtenant thereto, and usable in connection with the present or future operation and occupancy of the Premises and the Improvements and all building equipment, materials and supplies of any nature whatsoever owned by Mortgagor, or in which Mortgagor has or shall have an interest, now or hereafter located upon the Premises and the Improvements, or appurtenant thereto, or usable in connection with the present or future operation and occupancy of the Premises and the Improvements (hereinafter collectively called the "Equipment"), and the right, title and interest of Mortgagor in and to any of the Equipment which may be subject to any security interests, as defined in the Uniform Commercial Code, as adopted and enacted by the state or states where any of the Mortgaged Property is located (the "Uniform Commercial Code"), superior in lien to the lien of this Mortgage; and

c.    all awards or payments, including interest thereon, which may heretofore and hereafter be made with respect to the Mortgaged Property, whether from the exercise of the right of eminent domain (including but not limited to any transfer made in lieu of or in anticipation of the exercise of said right), or for a change of grade, or for any other injury to or decrease in the value of the Mortgaged Property; and

d.    all leases and other agreements affecting the use, enjoyment or occupancy of the Premises and the Improvements heretofore or hereafter entered into (the "Leases") and all rents, issues and profits (including all oil and gas or other mineral royalties and bonuses) from the Premises and the Improvements (the "Rents") and all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Debt; and

e.    all proceeds of and any unearned premiums on any insurance policies covering the Mortgaged Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Mortgaged Property; and

    f.    the right, in the name and on behalf of Mortgagor, to appear in and defend any action or proceeding brought with respect to the Mortgaged Property and to commence any action or proceeding to protect the interest of Mortgagee in the Mortgaged Property; and

TO HAVE AND TO HOLD the above granted and described Mortgaged Property unto and to the use and benefit of Mortgagee, and the successors and assigns of Mortgagee, forever; and

PROVIDED, HOWEVER, these presents are upon the express condition that, if Mortgagor shall well and truly pay to Mortgagee the Debt at the time and in the manner provided in the Note and this Mortgage and shall well and truly abide by and comply with each and every covenant and condition set forth herein and in the Note, these presents and the estate hereby granted shall cease, terminate and be void;

AND Mortgagor represents and warrants to and covenants and agrees with Mortgagee as follows:

1.    <u>Payment of Debt and Incorporation of Covenants, Conditions and Agreements</u>. Mortgagor will pay the Debt at the time and in the manner provided in the Note and in this Mortgage. All the covenants, conditions and agreements contained in (a) the Note and (b) all and any of the documents other than the Note or this Mortgage, now or hereafter executed by Mortgagor and/or others and by or in favor of Mortgagee, including any guaranty of the Loan (each such guaranty being referred to herein, individually and collectively, together with all extensions, renewals, modifications, substitutions and amendments thereof, as the "<u>Guaranty</u>") which wholly or partially secure or guaranty payment of the Note (the "<u>Other Security Documents</u>") are hereby made a part of this Mortgage to the same extent and with the same force as if fully set forth herein.

2.    <u>Warranty of Title</u>. Mortgagor warrants that Mortgagor has good title to the Mortgaged Property and has the right to mortgage, give, grant, bargain, sell, assign, transfer, convey, confirm, pledge, set over and hypothecate the same and that Mortgagor possesses an unencumbered fee estate in the Premises and the Improvements and that it owns the Mortgaged Property free and clear of all liens, encumbrances and charges whatsoever except for those exceptions shown in the title insurance policy insuring the lien of this Mortgage. Mortgagor shall forever warrant, defend and preserve such title and the validity and priority of the lien of this Mortgage and shall forever warrant and defend the same to Mortgagee against the claims of all persons whomsoever.

3.    <u>Insurance</u>.

    3.1.    Mortgagor will keep the Mortgaged Property insured against loss or damage by fire, flood and such other hazards, risks and matters, including without limitation, (i) "All Risk" fire and extended coverage hazard insurance (non-reporting

3

Mortgagor: L & L Lott Construction LLC, an Illinois Limited Liability Company
Loan:FTF_133871_56780

Commercial Property Policy with Special Cause of Loss form) covering the Mortgaged Property in an aggregate amount not less than 100.00% of the agreed upon full insurable replacement value of the Mortgaged Property and naming Mortgagee, its successors and assigns as their interests may appear, as the first mortgagee under a standard mortgagee endorsement clause; (ii) comprehensive general public liability insurance covering injury and damage to persons and property with limits reasonably acceptable to Mortgagee and naming Mortgagee, its successors and assigns as their interests may appear, as an additional insured; (iii) if the Mortgaged Property is located within a "special flood hazard area" as identified by the Secretary of Housing and Urban Development under the National Flood Insurance Reform Act of 1994, flood insurance in the amount equal to the lesser of (A) the agreed upon full insurable replacement value of the Mortgaged Property (less any value attributable to the Property), or (B) the maximum available amount through the Federal Flood Insurance Program, and naming Mortgagee, its successors and assigns as their interests may appear, as the first mortgagee under a standard mortgagee endorsement clause; (iv) insurance which complies with the workers' compensation and employers liability laws of all states in which Mortgagor shall be required to maintain such insurance; and (v) such other insurance as Mortgagee may reasonably require from time to time in amounts and with carriers reasonably satisfactory to Mortgagee, all of the foregoing without exclusion for acts of terrorism. All of the policies required hereunder (the "Policies") shall (i) be assigned and delivered to Mortgagee; (ii) include a provision that such Policy will not be cancelled, altered or in any way limited in coverage or reduced in amount unless Mortgagee is notified in writing at least 30 days prior to such cancellation or change (and Mortgagor will deliver evidence satisfactory to Mortgagee of the renewal of each of the Policies not later than 15 days prior to the expiration date of same); (iii) contain a mortgagee non contribution clause naming Mortgagee as the person to which all payments made by such insurance company shall be paid; and (iv) be written on such forms as are reasonably acceptable to Mortgagee by insurance companies authorized or licensed to do business in the state in which the Mortgaged Property is located having an Alfred M. Best Company, Inc. rating of "A" or higher and a financial size category of not less than IX. Mortgagor shall pay the premiums for such insurance (the "Insurance Premiums") as the same become due and payable.

3.2.   If the Mortgaged Property shall be damaged or destroyed, in whole or in part, by fire or other casualty, Mortgagor shall give prompt notice thereof to Mortgagee. Sums paid to Mortgagee by any insurer may be retained and applied by Mortgagee, after deduction of Mortgagee's reasonable costs and expenses of collection, toward payment of the Debt in such priority and proportions as Mortgagee in its discretion shall deem proper or, at the discretion of Mortgagee, either in whole or in part, to Mortgagor for such purposes as Mortgagee shall designate; provided that, so long as no Event of Default (as hereinafter defined) has occurred and is continuing, any

4

such proceeds which are not in excess of $5,000.00 shall be disbursed directly to Mortgagor to be applied towards the cost of the repair or restoration of the Mortgaged Property.

4.     <u>Payment of Taxes, Etc</u>. Mortgagor shall pay all taxes, assessments, water rates and sewer rents, now or hereafter levied or assessed or imposed against the Mortgaged Property or any part thereof (the "<u>Taxes</u>") and all ground rents, maintenance charges, other governmental impositions, and other charges, including without limitation vault charges and license fees for the use of vaults, chutes and similar areas adjoining the Premises, now or hereafter levied or assessed or imposed against the Mortgaged Property or any part thereof (the "<u>Other Charges</u>") as same become due and payable; provided that, Mortgagor shall not be required to pay such Taxes or Other Charges if the validity or amount thereof shall currently be contested in good faith by appropriate proceedings and, in such event, Mortgagor has set aside on their books, adequate reserves with respect thereto. Mortgagor will deliver to Mortgagee, promptly upon Mortgagee's request, evidence satisfactory to Mortgagee that the Taxes and Other Charges have been so paid or are not then delinquent. Other than liens or charges which are being contested in good faith by appropriate legal proceedings, Mortgagor shall not suffer and shall promptly cause to be paid and discharged any lien or charge whatsoever which may be or become a lien or charge against the Mortgaged Property, and shall promptly pay for all utility services provided to the Mortgaged Property. Upon request, Mortgagor shall furnish to Mortgagee receipts for the payment of the Taxes, Other Charges and said utility services prior to the date the same shall become delinquent.

5.     <u>Escrow Fund</u>. Mortgagor shall, at the option of Mortgagee, pay to Mortgagee on the first day of each calendar month (a) one-twelfth of an amount which would be sufficient to pay the Taxes payable, or estimated by Mortgagee to be payable, during the next ensuing 12 months and (b) one-twelfth of an amount which would be sufficient to pay the Insurance Premiums due for the renewal of the coverage afforded by the Policies upon the expiration thereof (said amounts in (a) and (b) above hereinafter called the "<u>Escrow Fund</u>"). The Escrow Fund and the payments of interest or principal or both, payable pursuant to the Note shall be added together and shall be paid as an aggregate sum by Mortgagor to Mortgagee. Mortgagor hereby pledges to Mortgagee any and all monies now or hereafter deposited in the Escrow Fund as additional security for the payment of the Debt. Mortgagee will apply the Escrow Fund to payments of Taxes and Insurance Premiums required to be made by Mortgagor pursuant to Paragraphs 3 and 4 hereof. If the amount of the Escrow Fund shall exceed the amounts due for Taxes and Insurance Premiums pursuant to Paragraphs 3 and 4 hereof, Mortgagee shall, in its discretion, return any excess to Mortgagor or credit such excess against future payments to be made to the Escrow Fund. In allocating such excess, Mortgagee may deal with the person shown on the records of Mortgagee to be the owner of the Mortgaged Property. If the Escrow Fund is not sufficient to pay the items set forth in (a) and (b) above, Mortgagor shall promptly pay to Mortgagee, upon demand, an amount which Mortgagee shall estimate as sufficient to make up the

deficiency. Upon the occurrence of an Event of Default (hereinafter defined), Mortgagee may apply any sums then present in the Escrow Fund to the payment of the following items in any order in its uncontrolled discretion:

5.1.   Taxes and Other Charges; or

5.2.   Insurance Premiums; or

5.3.   Interest on the unpaid principal balance of the Note; or

5.4.   Amortization of the unpaid principal balance of the Note; or

5.5.   All other sums payable pursuant to the Note, this Mortgage and the Other Security Documents, including without limitation advances made by Mortgagee pursuant to the terms of this Mortgage.

Until expended or applied as above provided, any amounts in the Escrow Fund shall constitute additional security for the Debt. The Escrow Fund shall not constitute a trust fund and may be commingled with other monies held by Mortgagee. No earnings or interest on the Escrow Fund shall be payable to Mortgagor.

6.   <u>Condemnation</u>. Mortgagor shall promptly give Mortgagee notice of the actual or threatened commencement of any condemnation or eminent domain proceeding and shall deliver to Mortgagee copies of any and all papers served in connection with such proceedings. Notwithstanding any taking by any public or quasi-public authority through eminent domain or otherwise (including but not limited to any transfer made in lieu of or in anticipation of the exercise of such taking), Mortgagor shall continue to pay the Debt at the time and in the manner provided for its payment in the Note and in this Mortgage and the Debt shall not be reduced until any award or payment therefor shall have been actually received and applied by Mortgagee, after the deduction of expenses of collection, to the reduction or discharge of the Debt. Mortgagee shall not be limited to the interest paid on the award by the condemning authority but shall be entitled to receive out of the award interest at the rate or rates provided herein and in the Note. Mortgagee may apply any such award or payment to the reduction or discharge of the Debt whether or not then due and payable. If the Mortgaged Property is sold, through foreclosure or otherwise, prior to the receipt by Mortgagee of such award or payment, Mortgagee shall have the right, whether or not a deficiency judgment on the Note shall have been sought, recovered or denied, to receive said award or payment, or a portion thereof sufficient to pay the Debt.

7.   <u>Leases and Rents</u>. Mortgagee is hereby granted and assigned by Mortgagor the right to enter the Mortgaged Property for the purpose of enforcing its interest in the Leases and the Rents, this Mortgage constituting a present, absolute assignment of the Leases and the Rents. Nevertheless, subject to the terms of this Paragraph 7, Mortgagee grants to

6

Mortgagor a revocable license to operate and manage the Mortgaged Property and to collect the Rents. Mortgagor shall hold the Rents, or a portion thereof sufficient to discharge all current sums due on the Debt, for use in the payment of such sums. Upon or at any time after an Event of Default, the license granted to Mortgagor herein may be revoked by Mortgagee, and Mortgagee may enter upon the Mortgaged Property, and collect, retain and apply the Rents toward payment of the Debt in such priority and proportions as Mortgagee in its discretion shall deem proper.

8.     <u>Maintenance of Mortgaged Property</u>. Mortgagor shall cause the Mortgaged Property to be maintained in a good and safe condition and repair. The Improvements and the Equipment shall not be removed, demolished or materially altered (except for normal replacement of the Equipment the construction of the planned improvements at the Mortgaged Property, as more fully provided in the Escrow Letter Agreement and the other Loan Documents) without the consent of Mortgagee. Mortgagor shall promptly comply, in all material respects, with all laws, orders and ordinances affecting the Mortgaged Property, or the use thereof. Mortgagor shall promptly repair, replace or rebuild any part of the Mortgaged Property which may be destroyed by any casualty, or become damaged, worn or dilapidated or which may be affected by any proceeding of the character referred to in Paragraph 6 hereof and shall complete and pay for any structure at any time in the process of construction or repair on the Premises; provided that, with respect to any casualty or condemnation, the insurance proceeds or condemnation award, as applicable, shall be made available to Mortgagor for such restoration. Mortgagor shall not initiate, join in, acquiesce in, or consent to any change in any private restrictive covenant, zoning law or other public or private restriction, limiting or defining the uses which may be made of the Mortgaged Property or any part thereof. If under applicable zoning provisions the use of all or any portion of the Mortgaged Property is or shall become a nonconforming use, Mortgagor will not cause or permit such nonconforming use to be discontinued or abandoned without the express written consent of Mortgagee.

9.     <u>Transfer or Encumbrance of the Mortgaged Property</u>.

      9.1.     Mortgagor acknowledges that Mortgagee has examined and relied on the creditworthiness of Mortgagor and experience of Mortgagor in owning and operating properties such as the Mortgaged Property in agreeing to make the loan secured hereby, and that Mortgagee will continue to rely on Mortgagors ownership of the Mortgaged Property as a means of maintaining the value of the Mortgaged Property as security for repayment of the Debt. Mortgagor acknowledges that Mortgagee has a valid interest in maintaining the value of the Mortgaged Property so as to ensure that, should Mortgagor default in the repayment of the Debt, Mortgagee can recover the Debt by a sale of the Mortgaged Property. Mortgagor shall not, without the prior written consent of Mortgagee, sell, convey, alien, mortgage, encumber, pledge or otherwise transfer the Mortgaged Property or any

7

part thereof or permit the Mortgaged Property or any part thereof to be sold, conveyed, aliened, mortgaged, encumbered, pledged or otherwise transferred.

9.2.  A sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer within the meaning of this Paragraph 9 shall be deemed to include (i) an installment sales agreement wherein Mortgagor agrees to sell the Mortgaged Property or any part thereof for a price to be paid in installments; (ii) an agreement by Mortgagor leasing all or a substantial part of the Mortgaged Property for other than actual occupancy by a space tenant thereunder or a sale, assignment or other transfer of, or the grant of a security interest in, Mortgagor's right, title and interest in and to any Leases or any Rents; (iii) if Mortgagor, any Guarantor (hereinafter defined), or any general partner or managing member (or if no managing member, any member) of Mortgagor or Guarantor is a corporation, the voluntary or involuntary sale, conveyance or transfer of such corporation's stock (or the stock of any corporation directly or indirectly controlling such corporation by operation of law or otherwise) or the creation or issuance of new stock by which an aggregate of more than 10.000% of such corporation's stock shall be vested in a party or parties who are not now stockholders; (iv) if Mortgagor, any Guarantor or any general partner or managing member (or if no managing member, any member) of Mortgagor or any Guarantor is a limited or general partnership or joint venture, the change, removal or resignation of a general partner or managing partner or the transfer of the partnership interest of any general partner or managing partner; and (v) if Mortgagor, any Guarantor, any general partner of Mortgagor or of any Guarantor, any managing member (or if no managing member, any member) of Mortgagor or of any Guarantor or of any general partner of managing member (or if no managing member, any member) of Mortgagor or of any Guarantor is a limited liability company, the change, removal or resignation of any member thereof or the transfer of the membership interest of any member.

9.3.  Mortgagee reserves the right to condition the consent required hereunder upon a modification of the terms hereof and on assumption of this Mortgage as so modified by the proposed transferee, payment of a transfer fee, or such other conditions as Mortgagee shall determine in its sole discretion to be in the interest of Mortgagee. Mortgagee shall not be required to demonstrate any actual impairment of its security or any increased risk of default hereunder in order to declare the Debt immediately due and payable upon Mortgagor's sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Mortgaged Property without Mortgagee's consent.  This provision shall apply to every sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Mortgaged Property regardless of whether voluntary or not, or whether or not Mortgagee has consented to any previous sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Mortgaged Property.

Mortgagor: L & L Lott Construction LLC, an Illinois Limited Liability Company
Loan:FTF_133871_56780

10.    Estoppel Certificates.

   10.1.   After request by Mortgagee, Mortgagor, within 10 days, shall furnish Mortgagee with a statement, duly acknowledged and certified, setting forth (i) the amount of the original principal amount of the Note, (ii) the unpaid principal amount of the Note, (iii) the rate of interest of the Note, (iv) the date installments of interest and/or principal were last paid, (v) any offsets or defenses to the payment of the Debt, if any, and (vi) that the Note and this Mortgage are valid, legal and binding obligations and have not been modified or if modified, giving particulars of such modification.

   10.2.   After request by Mortgagee, Mortgagor, within 10 days, will furnish Mortgagee with estoppel certificates from any lessees under the Leases as required by their respective Leases; provided, however, that, in the event Mortgagor is unable to deliver the estoppel certificates within the aforementioned 10 day period, so long as Mortgagee is acting in good faith, and is making a diligent effort to obtain the estoppel certificates, such 10 day period shall be extended for such time as is reasonably necessary for Mortgagor to furnish Mortgagee with the estoppel certificates, such additional period not to exceed 20 days.

   10.3.   Notwithstanding anything contained in this Section to the contrary, Mortgagor, within 10 days of the signing of any new Lease, will furnish Mortgagee with the estoppel certificate as provided in Section 10(b) hereof from the lessee under any such Lease.

11.    Changes in the Laws Regarding Taxation.  If any law is enacted or adopted or amended after the date of this Mortgage which deducts the Debt from the value of the Mortgaged Property for the purpose of taxation or which imposes a tax, either directly or indirectly, on the Debt or Mortgagee's interest in the Mortgaged Property, Mortgagor will pay such tax, with interest and penalties thereon, if any.  In the event Mortgagor is advised by counsel chosen by it that the payment of such tax or interest and penalties by Mortgagor would be unlawful or taxable to Mortgagee or unenforceable or provide the basis for a defense of usury, then in any such event, Mortgagee shall have the option, by written notice of not less than 90 days, to declare the Debt immediately due and payable.

12.    No Credits on Account of the Debt.  Mortgagor will not claim or demand or be entitled to any credit or credits on account of the Debt for any part of the Taxes or Other Charges assessed against the Mortgaged Property, or any part thereof, and no deduction shall otherwise be made or claimed from the assessed value of the Mortgaged Property, or any part thereof, for real estate tax purposes by reason of this Mortgage or the Debt. In the event such claim, credit or deduction shall be required by law, Mortgagee shall have the option, by written notice of not less than 90 days, to declare the Debt immediately due and payable.

9

13. <u>Documentary Stamps</u>. If at any time the United States of America, any State thereof or any subdivision of any such State shall require revenue or other stamps to be affixed to the Note or this Mortgage, or impose any other tax or charge on the same, Mortgagor will pay for the same, with interest and penalties thereon, if any.

14. <u>Usury Laws</u>. This Mortgage and the Note are subject to the express condition that at no time shall Mortgagor be obligated or required to pay interest on the Debt at a rate which could subject the holder of the Note to either civil or criminal liability as a result of being in excess of the maximum interest rate which Mortgagor is permitted by applicable law to contract or agree to pay. If by the terms of this Mortgage or the Note, Mortgagor is at any time required or obligated to pay interest on the Debt at a rate in excess of such maximum rate, the rate of interest under the same shall be deemed to be immediately reduced to such maximum rate and the interest payable shall be computed at such maximum rate and all prior interest payments in excess of such maximum rate shall be applied and shall be deemed to have been payments in reduction of the principal balance of the Note.

15. <u>Books and Records</u>. Mortgagor and Guarantor, if any, shall keep adequate books and records of account in accordance with generally accepted accounting practices consistently applied, and, upon reasonable request therefor, furnish, or cause to be furnished, to Mortgagee: (a) within 120 days after the end of each calendar year, an annual operating statement of the Mortgaged Property detailing the total revenues received and total expenses incurred to be prepared and certified by Mortgagor; (b) within 120 days after the end of each calendar year, an annual balance sheet and profit and loss statement and statement of global cash flow of Mortgagor, prepared on a federal income tax reporting basis; (c) the personal financial statement(s) of Andre Lott (individually and/or collectively, the "<u>Guarantor</u>"), on a form approved by Mortgagee, which shall be provided within 14 months of the date of the most recent statements delivered to Lender; (d) within 30 days after filing, (1) the individual federal income tax returns for Guarantor, (ii) the business or corporate federal income tax returns for Mortgagor, and (iii) Mortgagor's federal income tax return; provided, however, in the event that the Mortgagor file for an extension of time to file such tax return, copies of any such filed extensions within 15 days of filing of the same, and (e) such annual balance sheets, profit and loss statements and other financial statements as may, from time to time, be required by Mortgagee.

16. <u>Performance of Other Agreements</u>. Mortgagor shall observe and perform in all material respects each and every term to be observed or performed by Mortgagor pursuant to the terms of any agreement or recorded instrument affecting or pertaining to the Mortgaged Property.

17. <u>Further Acts, Etc</u>. Mortgagor will, at the cost of Mortgagor, and without expense to Mortgagee, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfers and assurances as

Mortgagee shall, from time to time, require, for the better assuring, conveying, assigning, transferring, and confirming unto Mortgagee the property and rights hereby mortgaged, given, granted, bargained, sold, assigned, transferred, conveyed, confirmed, pledged, set over and hypothecated or intended now or hereafter so to be, or which Mortgagor may be or may hereafter become bound to convey or assign to Mortgagee, or for carrying out the intention or facilitating the performance of the terms of this Mortgage or for filing, registering or recording this Mortgage. Mortgagor, on demand, will execute and deliver and hereby authorizes Mortgagee to execute in the name of Mortgagor or without the signature of Mortgagor to the extent Mortgagee may lawfully do so, one or more financing statements, chattel mortgages or other instruments, to evidence more effectively the security interest of Mortgagee in the Mortgaged Property. Mortgagor grants to Mortgagee an irrevocable power of attorney coupled with an interest for the purpose of exercising and perfecting any and all rights and remedies available to Mortgagee at law and in equity, including without limitation such rights and remedies available to Mortgagee pursuant to this Paragraph 17.

18.   Recording of Mortgage, Etc. Mortgagor forthwith upon the execution and delivery of this Mortgage and thereafter, from time to time, will cause this Mortgage, and any security instrument creating a lien or security interest or evidencing the lien hereof upon the Mortgaged Property and each instrument of further assurance to be filed, registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and fully to protect the lien or security interest hereof upon, and the interest of Mortgagee in, the Mortgaged Property. Mortgagor will pay all filing, registration or recording fees, and all expenses incident to the preparation, execution and acknowledgment of this Mortgage, any mortgage supplemental hereto, any security instrument with respect to the Mortgaged Property and any instrument of further assurance, and all federal, state, county and municipal, taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of this Mortgage, any mortgage supplemental hereto, any security instrument with respect to the Mortgaged Property or any instrument of further assurance, except where prohibited by law so to do. Mortgagor shall hold harmless and indemnify Mortgagee, its successors and assigns, against any liability incurred by reason of the imposition of any tax on the making and recording of this Mortgage.

19.   Prepayment. If permitted by the Note, the Debt may be prepaid in accordance with the terms thereof.

20.   Events of Default.

   20.1.   The Debt shall become immediately due and payable at the option of Mortgagee upon the occurrence of an Event of Default, as such term is defined in the Note ("Event of Default") or if for more than 30 days after written notice from Mortgagee, Mortgagor shall continue to be in default under any other term,

covenant or condition of the Note, this Mortgage or the Other Security Documents; provided, however, that if such default is susceptible of cure but cannot reasonably be cured within such 30 day period, and provided further that Mortgagor shall have commenced to cure such default within such 30 day period and thereafter diligently and expeditiously proceeds to cure the same, such 30 day period shall be extended for such time as is reasonably necessary for Mortgagor in the exercise of due diligence to cure such default, such additional period not to exceed 60 days.

20.2.  Construction Defaults.  Borrower's failure to meet the following requirements within 30 days of Lender providing written notice to Borrower of Borrower's failure to comply shall be an additional Event of Default under this Mortgage:

20.2.1. Borrower shall comply with all Action Items required by Lender to the satisfaction of Lender in Lender's sole and absolute discretion.  The term "Action Items" as used herein shall mean actions that Lender, in Lender's sole and absolute discretion, has determined Borrower shall take to ensure that the construction on the Property is being conducted and completed to the satisfaction of Lender.  Lender may inspect the Property at any time and require Borrower to remediate construction if any work performed at the Property is considered substandard by Lender in Lender's absolute discretion.  The failure to complete any additional work required by Lender upon inspection of the Property within 30 days' notice by Lender or its agents to Borrower shall be considered an additional Event of Default under this Agreement.

20.2.2. Borrower shall not permit cessation of construction for a period in excess, in the aggregate, of 30 calendar days for any reason.  Notwithstanding the foregoing, this 30 calendar-day period shall be extended, but only up to an aggregate maximum of 90 days not to exceed the Maturity Date in any event, for any delays that are beyond the control of Borrower, including delays caused by strikes, acts of God, weather, inability to obtain labor or materials, inability to obtain governmental permits or approvals, governmental restrictions, civil commotion, fire, or similar causes ("Unavoidable Delay") (but excluding financial circumstances or events that may be resolved by the payment of money), and provided Borrower has notified Lender of such delay within 10 days of its occurrence, and provided that no Unavoidable Delay shall (i) suspend or otherwise abate any obligation of Borrower to pay any sum of money, including principal and interest, under the Loan Documents, (ii) suspend or abate any other obligation of Borrower under the Loan Documents, or (iii) extend the Scheduled Completion Date or the Maturity Date.

21.  <u>Remedies of Mortgagee.</u>

21.1.   Upon the occurrence and during the continuance of any Event of Default, Mortgagor will pay, from the date of that Event of Default, interest on the unpaid principal balance of the Note at the Default Rate set forth in the Note (the "Default Rate") and Mortgagee shall have the right to exercise any and all rights and remedies available at law and in equity under this Mortgage, including, but not limited to, the following actions (and any other remedies set forth elsewhere in this Mortgage), each of which may be pursued concurrently or otherwise, at such time and in such order as Mortgagee may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of Mortgagee:

21.1.1. declare the entire unpaid Debt, less any amounts held by Lender pursuant to the Escrow Letter Agreement, to be immediately due and payable (provided that upon the occurrence of an Event of Default described in Section 6.1 of the Note, the Debt, less any amounts held by Lender pursuant to the Escrow Letter Agreement, shall immediately and automatically become due and payable); or

21.1.2. institute proceedings, judicial or otherwise, for the complete foreclosure of this Mortgage under any applicable provision of law; or

21.1.3. with or without entry, to the extent permitted and pursuant to the procedures provided by applicable law, institute proceedings for the partial foreclosure of this Mortgage for the portion of the Debt then due and payable, subject to the continuing lien and security interest of this Mortgage for the balance of the Debt not then due, unimpaired and without loss of priority; or

21.1.4. sell for cash or upon credit the Mortgaged Property or any part thereof and all estate, claim, demand, right, title and interest of Mortgagor therein and rights of redemption thereof, pursuant to power of sale or otherwise, at one or more sales, in one or more parcels, at such time and place, upon such terms and after such notice thereof as may be required or permitted by law; or

21.1.5. institute an action, suit or proceeding in equity for the specific performance of any covenant, condition or agreement contained herein, in the Note or in the Other Security Documents; or

21.1.6. recover judgment on the Note either before, during or after any proceedings for the enforcement of this Mortgage or the Other Security Documents; or

21.1.7. subject to any applicable law, the license granted to Mortgagor under Section 7 shall automatically be revoked and Mortgagee may enter into or

13

Mortgagor: L & L Lott Construction LLC, an Illinois Limited Liability Company
Loan:FTF_133871_56780

upon the Mortgaged Property, either personally or by its agents, nominees or attorneys and dispossess Mortgagor and its agents and servants therefrom, without liability for trespass, damages or otherwise and exclude Mortgagor and its agents or servants wholly therefrom, and take possession of all books, records and accounts relating thereto and Mortgagor agrees to surrender possession of the Mortgaged Property and of such books, records and accounts to Mortgagee upon demand, and thereupon Mortgagee may (1) use, operate, manage, control, insure, maintain, repair, restore and otherwise deal with all and every part of the Mortgaged Property and conduct the business thereat; (2) complete any construction on the Mortgaged Property in such manner and form as Mortgagee deems advisable; (3) make alterations, additions, renewals, replacements and improvements to or on the Mortgaged Property; (4) exercise all rights and powers of Mortgagor with respect to the Mortgaged Property, whether in the name of Mortgagor or otherwise, including, without limitation, the right to make, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive all Rents of the Mortgaged Property and every part thereof; (5) require Mortgagor to vacate and surrender possession of the Mortgaged Property to Mortgagee or to such receiver and, in default thereof, Mortgagor may be evicted by summary proceedings or otherwise; and (6) apply the receipts from the Mortgaged Property to the payment of the Debt, in such order, priority and proportions as Mortgagee shall deem appropriate in its sole discretion after deducting therefrom all expenses (including reasonable attorneys' fees) incurred in connection with the aforesaid operations and all amounts necessary to pay the Taxes, Other Charges, insurance and other expenses in connection with the Mortgaged Property, as well as just and reasonable compensation for the services of Mortgagee, its counsel, agents and employees; or

21.1.8. apply any sums then deposited in the Escrow Fund and any other sums held in escrow or otherwise by Mortgagee in accordance with the terms of this Mortgage or any Other Security Document to the payment of the following items in any order in its sole discretion: (1) Taxes and Other Charges; (2) Insurance Premiums; (3) mortgaged Lease Rents; (4) interest on the unpaid principal balance of the Note; (5) amortization of the unpaid principal balance of the Note; (6) all other sums payable pursuant to the Note, this Mortgage and the Other Security Documents, including without limitation advances made by Mortgagee pursuant to the terms of this Mortgage; or

21.1.9. surrender the Policies, collect the unearned Insurance Premiums, and apply such sums as a credit on the Debt in such priority and proportion as Mortgagee in its discretion shall deem proper, and in connection therewith, Mortgagor hereby appoints Mortgagee as agent and attorney-in-fact (which

14

Mortgagor: L & L Lott Construction LLC, an Illinois Limited Liability Company
Loan:FTF_133871_56780

is coupled with an interest and is therefore irrevocable) for Mortgagor to collect such Insurance Premiums.

In the event of a sale, by foreclosure, power of sale, or otherwise, of less than all of the Mortgaged Property, this Mortgage shall continue as a lien and security interest on the remaining portion of the Mortgaged Property unimpaired and without loss of priority.

21.2.   The purchase money, proceeds and avails of any disposition of the Mortgaged Property, or any part thereof, or any other sums collected by Mortgagee pursuant to the Note, this Mortgage or the Other Security Documents, may be applied by Mortgagee to the payment of the Debt in such priority and proportions as Mortgagee in its discretion shall deem proper.

21.3.   The failure of Mortgagee to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Mortgage. Mortgagor shall not be relieved of Mortgagor's obligations hereunder by reason of (A) the failure of Mortgagee to comply with any request of Mortgagor, any Guarantor or any indemnitor to take any action to foreclose this Mortgage or otherwise enforce any of the provisions hereof or of the Note or the Other Security Documents, (B) the release, regardless of consideration, of the whole or any part of the Mortgaged Property, or of any person liable for the Debt or any portion thereof, or (C) agreement or stipulation by Mortgagee extending the time of payment or otherwise modifying or supplementing the terms of the Note, this Mortgage or the Other Security Documents.

21.4.   It is agreed that the risk of loss or damage to the Mortgaged Property is on Mortgagor, and Mortgagee shall have no liability whatsoever for decline in value of the Mortgaged Property, for failure to maintain the Policies, or for failure to determine whether insurance in force is adequate as to the amount of risks insured. Possession by Mortgagee shall not be deemed an election of judicial relief, if any such possession is requested or obtained, with respect to any Mortgaged Property or collateral not in Mortgagee's possession.

21.5.   Mortgagee may resort for the payment of the Debt to any other security held by Mortgagee in such order and manner as Mortgagee, in its discretion, may elect. Mortgagee may take action to recover the Debt, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of Mortgagee thereafter to foreclose this Mortgage. The rights of Mortgagee under this Mortgage shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Mortgagee shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision. Mortgagee shall

15

not be limited exclusively to the rights and remedies herein stated but shall be entitled to every right and remedy now or hereafter afforded at law or in equity.

21.6. Mortgagee may release any portion of the Mortgaged Property for such consideration as Mortgagee may require without, as to the remainder of the Mortgaged Property, in any way impairing or affecting the lien or priority of this Mortgage, or improving the position of any subordinate lienholder with respect thereto, except to the extent that the obligations hereunder shall have been reduced by the actual monetary consideration, if any, received by Mortgagee for such release, and may accept by assignment, pledge or otherwise any other property in place thereof as Mortgagee may require without being accountable for so doing to any other lienholder. This Mortgage shall continue as a lien and security interest in the remaining portion of the Mortgaged Property.

21.7. If the Mortgaged Property is not in compliance with applicable laws, Mortgagee may impose additional requirements upon Mortgagor in connection herewith including, without limitation, monetary reserves or financial equivalents.

21.8. If any or all of the proceeds of the Note have been used to extinguish, extend or renew any indebtedness heretofore existing against the Mortgaged Property, then, to the extent of the funds so used, Mortgagee shall be subrogated to all of the rights, claims, liens, titles, and interests existing against the Mortgaged Property heretofore held by, or in favor of, the holder of such indebtedness and such former rights, claims, liens, titles, and interests, if any, are not waived but rather are continued in full force and effect in favor of Mortgagee and are merged with the lien and security interest created herein as cumulative security for the repayment of the Debt, the performance and discharge of Mortgagor's obligations hereunder, under the Note and the Other Security Documents.

22. <u>Sale of Mortgaged Property</u>. If this Mortgage is foreclosed, the Mortgaged Property, or any interest therein, may at the discretion of Mortgagee, be sold in one or more parcels or in several interests or portions and in any order or manner.

23. <u>Right to Cure Defaults</u>. Upon the occurrence and during the continuance of any Event of Default or if Mortgagor fails to make any payment or to do any act as herein provided, subject to any applicable notice and cure periods provided herein or in any other Loan Document, Mortgagee may, but without any obligation to do so and without notice to or demand on Mortgagor and without releasing Mortgagor from any obligation hereunder, make or do the same in such manner and to such extent as Mortgagee may deem necessary to protect the security hereof. Mortgagee is authorized to enter upon the Mortgaged Property for such purposes, or appear in, defend, or bring any action or proceeding to protect its interest in the Mortgaged Property or to foreclose this Mortgage or collect the Debt, and the cost and expense thereof (including reasonable attorneys' fees to the extent

16

permitted by law), with interest as provided in this Paragraph 23, shall constitute a portion of the Debt and shall be due and payable to Mortgagee upon demand. All such costs and expenses incurred by Mortgagee in remedying such Event of Default or in appearing in, defending, or bringing any such action or proceeding shall bear interest at the Default Rate, for the period after notice from Mortgagee that such cost or expense was incurred to the date of payment to Mortgagee. All such costs and expenses incurred by Mortgagee together with interest thereon calculated at the Default Rate shall be deemed to constitute a portion of the Debt and be secured by this Mortgage and the Other Security Documents and shall be immediately due and payable upon demand by Mortgagee therefor.

24.   Late Payment Charge. If any portion of the Debt is not paid within 10 days after the date on which it is due, Mortgagor shall pay to Mortgagee upon demand an amount referenced in the Note signed on the date simultaneously herewith.

25.   Prepayment After Event of Default. If following the occurrence of any Event of Default, Mortgagor shall tender payment of an amount sufficient to satisfy the Debt in whole or in part at any time prior to a foreclosure sale of the Mortgaged Property, and if at the time of such tender prepayment of the principal balance of the Note is not permitted by the Note, Mortgagor shall, in addition to the entire Debt, also pay to Mortgagee a sum equal to interest which would have accrued on the principal balance of the Note at the Applicable Interest Rate as defined in the Note from the date of such tender to the earlier of (i) the Maturity Date as defined in the Note or to (ii) the first day of the period during which prepayment of the principal balance of the Note would have been permitted together with a prepayment consideration equal to the prepayment consideration which would have been payable as of the first day of the period during which prepayment would have been permitted. If at the time of such tender prepayment of the principal balance of the Note is permitted, such tender by Mortgagor shall be deemed to be a voluntary prepayment of the principal balance of the Note, and Mortgagor shall, in addition to the entire Debt, also pay to Mortgagee the applicable prepayment consideration specified in the Note and this Mortgage.

26.   Right of Entry. Mortgagee and its agents shall have the right to enter and inspect the Mortgaged Property at all reasonable times, and in accordance with the applicable provisions hereof.

27.   Mortgagee in Possession and Appointment of Receiver. The holder of this Mortgage, upon the occurrence of an Event of Default or in any action to foreclose this Mortgage or upon the actual or threatened waste to any part of the Mortgaged Property, shall have the right to be placed as mortgagee in possession or be entitled to the appointment of a receiver to take possession of all or any part of the Mortgaged Property, with the power to protect and preserve the Mortgage Property, to operate the Mortgaged Property preceding foreclosure sale, and to collect the rents from the Mortgaged Property and apply the proceeds, over and above the cost of the receivership, against the Debt, with or without notice and without

regard to the value of the Mortgaged Property as security for the Debt, or the solvency or insolvency of any person liable for the payment of the Debt. The mortgagee in possession or receiver may serve without bond if permitted by law. Employment by Mortgagee shall not disqualify a person from serving as a receiver. Any receiver appointed pursuant to this Mortgage or Loan Documents shall have all rights of a receiver under Illinois law.

28.  <u>Reasonable Use and Occupancy</u>.  In addition to the rights which Mortgagee may have herein, upon the occurrence and during the continuance of any Event of Default. Mortgagee may require Mortgagor to vacate and surrender possession of the Mortgaged Property to Mortgagee or any receiver appointed with respect to the Mortgaged Property and, in default thereof, Mortgagor may be evicted by summary proceedings or otherwise.

29.  <u>Security Agreement.</u>  This Mortgage is both a real property mortgage and a "security agreement" within the meaning of the Uniform Commercial Code. The Mortgaged Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Mortgagor in the Mortgaged Property. Mortgagor by executing and delivering this Mortgage has granted and hereby grants to Mortgagee, as security for the Debt, a security interest in the Mortgaged Properly to the full extent that the Mortgaged Property may be subject to the Uniform Commercial Code (said portion of the Mortgaged Property so subject to the Uniform Commercial Code being called in this Paragraph 29 the "<u>Collateral</u>"). If an Event of Default shall occur and be continuing, Mortgagee, in addition to any other rights and remedies which it may have, shall have and may exercise immediately and without demand, any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limiting the generality of the foregoing, the right to take possession of the Collateral or any part thereof, and to take such other measures as Mortgagee may deem necessary for the care, protection and preservation of the Collateral. Upon request or demand of Mortgagee, Mortgagor shall at its expense assemble the Collateral and make it available to Mortgagee at a convenient place acceptable to Mortgagee. Mortgagor shall pay to Mortgagee on demand any and all expenses, including legal expenses and attorneys' fees, incurred or paid by Mortgagee in protecting its interest in the Collateral and in enforcing its rights hereunder with respect to the Collateral. Any notice of sale, disposition or other intended action by Mortgagee with respect to the Collateral sent to Mortgagor in accordance with the provisions hereof at least 5 days prior to such action, shall constitute commercially reasonable notice to Mortgagor. The proceeds of any disposition of the Collateral, or any part thereof, may be applied by Mortgagee to the payment of the Debt in such priority and proportions as Mortgagee in its discretion shall deem proper. Inasmuch as the parties intend that this Mortgage shall, among other things, constitute a financing statement, Borrower sets forth the following:

29.1.  The Debtor is L & L Lott Construction LLC, an Illinois Limited Liability Company, with an address of 8506 S. Aberdeen Street, Chicago, IL 60620; and

18

Mortgagor: L & L Lott Construction LLC, an Illinois Limited Liability Company
Loan:FTF_133871_56780

29.2.  The Secured Party is FTF Lending, LLC, a Delaware Limited Liability Company, with an address of 1300 E 9th St STE 800, Cleveland, OH 44114; and

29.3.  The Collateral includes Fixtures that are or shall be affixed to the Real Estate.

30.  Actions and Proceedings.  Mortgagee has the right to appear in and defend any action or proceeding brought with respect to the Mortgaged Property and to bring any action or proceeding, in the name and on behalf of Mortgagor, which Mortgagee, in its discretion, decides should be brought to protect its interest in the Mortgaged Property.

31.  Waiver of Counterclaim.  Mortgagor hereby waives the right to assert a counterclaim, other than a mandatory or compulsory counterclaim, in any action or proceeding brought against it by Mortgagee, and waives trial by jury in any action or proceeding brought by either party hereto against the other or in any counterclaim asserted by Mortgagee against Mortgagor, or in any matters whatsoever arising out of or in any way connected with this Mortgage, the Note, any of the Other Security Documents or the Debt.

32.  Recovery of Sums Required to Be Paid.  Mortgagee shall have the right from time to time to take action to recover any sum or sums which constitute a part of the Debt as the same become due, without regard to whether or not the balance of the Debt shall be due, and without prejudice to the right of Mortgagee thereafter to bring an action of foreclosure, or any other action, for a default or defaults by Mortgagor existing at the time such earlier action was commenced.

33.  Marshalling and Other Matters.  Mortgagor hereby waives, to the extent permitted by law, the benefit of all appraisement, valuation, stay, extension, reinstatement and redemption laws now or hereafter in force and all rights of marshalling in the event of any sale hereunder of the Mortgaged Property or any part thereof or any interest therein.  Further, Mortgagor hereby expressly waives any and all rights of redemption from sale under any order or decree of foreclosure of this Mortgage on behalf of Mortgagor, and on behalf of each and every person acquiring any interest in or title to the Mortgaged Property subsequent to the date of this Mortgage and on behalf of all persons to the extent permitted by applicable law.

34.  Hazardous Materials.  Mortgagor represents and warrants that, to the best of Mortgagor's knowledge, after due inquiry and investigation, except as otherwise specifically disclosed or known to Mortgagee, (a) there are no Hazardous Materials (hereinafter defined) on the Mortgaged Property, except those in compliance with all applicable federal, state and local laws, ordinances, rules and regulations, and (b) Mortgagor has not received any notice or violation from any governmental agency or any source whatsoever with respect to Hazardous Materials on, from or affecting the Mortgaged Property. Mortgagor covenants that the Mortgaged Property shall be kept free of Hazardous Materials, and neither

19

Mortgagor nor any occupant of the Mortgaged Property shall use, transport, store, dispose of or in any manner deal with Hazardous Materials on the Mortgaged Property, except in compliance with all applicable federal, state and local laws, ordinances, rules and regulations. Mortgagor shall comply with, and ensure compliance by all occupants of the Mortgaged Property with all applicable federal, state and local laws, ordinances, rules and regulations, in each case, in all material respects, and shall keep the Mortgaged Property free and clear of any liens imposed pursuant to such laws, ordinances, rules or regulations. In the event that Mortgagor receives any notice or violation from any governmental agency or any source whatsoever with respect to Hazardous Materials on, from or affecting the Mortgaged Property, Mortgagor shall immediately notify Mortgagee. Mortgagor shall conduct and complete all investigations, studies, sampling, and testing, and all remedial actions necessary to clean up and remove all Hazardous Materials from the Mortgaged Property in accordance with all applicable federal, state, and local laws, ordinances, rules and regulations. The term "Hazardous Materials" as used in this Mortgage shall include, without limitation, gasoline, petroleum products, explosives, radioactive materials, polychlorinated biphenyls or related or similar materials, or any other substance or material defined as a hazardous or toxic substance or material by any federal, state or local law, ordinance, rule, or regulation, but excluding Asbestos, as defined in Paragraph 35 hereof. The obligations and liabilities of Mortgagor under this Paragraph 34 shall survive any entry of a judgment of foreclosure or the delivery of a deed in lieu of foreclosure of this Mortgage.

35. <u>Asbestos</u>. Mortgagor represents and warrants that, to the best of Mortgagor's knowledge, after due inquiry and investigation, that there is no asbestos or material containing asbestos ("<u>Asbestos</u>") on the Mortgaged Property, and that Mortgagor has not received any notice or violation from any governmental agency or any source whatsoever with respect to Asbestos on, affecting or installed on the Mortgaged Property. Mortgagor covenants that the Mortgaged Property shall be kept free of Asbestos, and neither Mortgagor nor any occupant of the Mortgaged Property shall install, or permit to be installed, Asbestos on the Mortgaged Property. Mortgagor shall comply with, and ensure compliance by all occupants of the Mortgaged Property, in each case, in all material respects, with, all applicable federal, state and local laws, ordinances, rules and regulations with respect to Asbestos, and shall keep the Mortgaged Property free and clear of any liens imposed pursuant to such laws, ordinances, rules or regulations. In the event that Mortgagor receives any notice or violation from any governmental agency or any source whatsoever with respect to Asbestos on, affecting or installed on the Mortgaged Property, Mortgagor shall immediately notify Mortgagee. Mortgagor shall conduct and complete all investigations, studies, sampling, and testing, and all remedial actions necessary to clean up and remove all Asbestos from the Mortgaged Property in accordance with all applicable federal, state and local laws, ordinances, rules and regulations. The obligations and liabilities of Mortgagor under this Paragraph 35 shall survive any entry of a judgment of foreclosure or delivery of a deed in lieu of foreclosure of this Mortgage.

Mortgagor: L & L Lott Construction LLC, an Illinois Limited Liability Company
Loan:FTF_133871_56780

36. <u>Indemnification</u>. Mortgagor shall protect, defend, indemnify and save harmless Mortgagee from and against all liabilities, obligations, claims, damages, penalties, causes of action, costs and expenses (including without limitation reasonable attorneys' fees and expenses), imposed upon or incurred by or asserted against Mortgagee, except to the extent resulting from Mortgagee's gross negligence or willful misconduct, by reason of (a) ownership of this Mortgage, the Mortgaged Property or any interest therein or receipt of any Rents; (b) any accident, injury to or death of persons or loss of or damage to property occurring in, on or about the Mortgaged Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (c) any use, nonuse or condition in, on or about the Mortgaged Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (d) any failure on the part of Mortgagor to perform or comply with any of the terms of this Mortgage; (e) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any part thereof; (f) the failure of any person to file timely with the Internal Revenue Service an accurate Form 1099-B, Statement for Recipients of Proceeds from Real Estate, Broker and Barter Exchange Transactions, which may be required in connection with the Mortgage, or to supply a copy thereof in a timely fashion to the recipient of the proceeds of the transaction in connection with which this Mortgage is made; (g) the presence, disposal, escape, seepage, leakage, spillage, discharge, emission, release, or threatened release of any Hazardous Materials on, from, or affecting the Mortgaged Property or any other property or the presence of Asbestos on the Mortgaged Property; (h) any personal injury (including wrongful death) or property damage (real or personal) arising out of or related to such Hazardous Materials or Asbestos; (i) any lawsuit brought or threatened, settlement reached, or government order relating to such Hazardous Materials or Asbestos; or (j) any violation of laws, orders, regulations, requirements, or demands of government authorities, which are based upon or in any way related to such Hazardous Materials or Asbestos including, without limitation, the costs and expenses of any remedial action, attorney and consultant fees, investigation and laboratory fees, court costs, and litigation expenses. Any amounts payable to Mortgagee by reason of the application of this Paragraph 36 shall become immediately due and payable and shall bear interest at the Default Rate from the date loss or damage is sustained by Mortgagee until paid. The obligations and liabilities of Mortgagor under this Paragraph 36 shall survive any termination, satisfaction, assignment, entry of a judgment of foreclosure or delivery of a deed in lieu of foreclosure of this Mortgage.

37. <u>Notices</u>. Any notice, demand, statement, request or consent made hereunder shall be in writing and shall be deemed given when postmarked, addressed and mailed by first class or registered United States mail addressed to the party to be so notified at its address hereinafter set forth, or to such other address as Mortgagor or Mortgagee, as the case may be, shall in like manner designate in writing.

Mortgagor: L & L Lott Construction LLC, an Illinois Limited Liability Company
Loan:FTF_133871_56780

37.1.   If to Mortgagor:      L & L Lott Construction LLC
                             8506 S. Aberdeen Street
                             Chicago, IL 60620
                             Attn: Andre Lott


37.2.   If to Mortgagee:      FTF Lending, LLC
                             1300 E 9th St STE 800
                             Cleveland, OH 44114
                             Attn: Matthew Rodak, Chief Executive Officer

38.   Authority/Patriot Act Compliance.

38.1.   Mortgagor (and the undersigned representative of Mortgagor, if any) has full power, authority and legal right to execute this Mortgage, and to mortgage, give, grant, bargain, sell, assign, transfer, convey, confirm, pledge, set over and hypothecate and assign the Mortgaged Property pursuant to the terms hereof and to keep and observe all of the terms of this Mortgage on Mortgagor's part to be performed.

38.2.   Mortgagor represents and warrants that Mortgagor is not a "foreign person" within the meaning of 1445(f)(3) of the Internal Revenue Code of 1986, as amended and the related Treasury Department regulations, including temporary regulations.

38.3.   Mortgagor will use its good faith and commercially reasonable efforts to comply with the Patriot Act (as defined below) and all applicable requirements of governmental authorities having jurisdiction of the Mortgagor and the Mortgaged Property, including those relating to money laundering and terrorism. The Mortgagee shall have the right to audit the Mortgagor's compliance with the Patriot Act and all applicable requirements of governmental authorities having jurisdiction of the Mortgagor and the Mortgaged Property, including those relating to money laundering and terrorism. In the event that the Mortgagor fails to comply with the Patriot Act or any such requirements of governmental authorities, then the Mortgagee may, at its option, cause the Mortgagor to comply therewith and any and all reasonable costs and expenses incurred by the Mortgagee in connection therewith shall be secured by this Mortgage and the other Loan Documents and shall be immediately due and payable. For purposes hereof, the term "Patriot Act" means the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA PATRIOT ACT) Act of 2001, as the same may be amended from time to time, and corresponding provisions of future laws. Neither the Mortgagor nor any partner in the Mortgagor or member of such partner nor any owner of a direct or indirect interest in the Mortgagor (a) is

22

Mortgagor: L & L Lott Construction LLC, an Illinois Limited Liability Company
Loan:FTF_133871_56780

listed on any Government Lists (as defined below), (b) is a person who has been determined by competent authority to be subject to the prohibitions contained in Presidential Executive Order No. 13224 (Sept. 23, 2001) or any other similar prohibitions contained in the rules and regulations of OFAC (as defined below) or in any enabling legislation or other Presidential Executive Orders in respect thereof, (c) has been previously indicted for or convicted of any felony involving a crime or crimes of moral turpitude or for any Patriot Act Offense (as defined below), or (d) is not currently under investigation by any governmental authority for alleged criminal activity. For purposes hereof, the term "Patriot Act Offense" means any violation of the criminal laws of the United States of America or of any of the several states, or that would be a criminal violation if committed within the jurisdiction of the United States of America or any of the several states, relating to terrorism or the laundering of monetary instruments, including any offense under (a) the criminal laws against terrorism; (b) the criminal laws against money laundering; (c) the Bank Secrecy Act, as amended; (d) the Money Laundering Control Act of 1986, as amended; or (e) the Patriot Act. "Patriot Act Offense" also includes the crimes of conspiracy to commit, or aiding and abetting another to commit, a Patriot Act Offense. For purposes hereof, the term "Government Lists" means (i) the Specially Designated Nationals and Blocked Persons Lists maintained by Office of Foreign Assets ConiTol ("OFAC"), (ii) any other list of terrorists, terrorist organizations or narcotics traffickers maintained pursuant to any of the Rules and Regulations of OFAC that Mortgagee notified Mortgagor in writing is now included in "Governmental Lists", or (iii) any similar lists maintained by the United States Department of State, the United States Department of Commerce or any other governmental authority or pursuant to any Executive Order of the President of the United States of America that Mortgagee notified Mortgagor in writing is now included in "Governmental Lists".

39. <u>Waiver of Notice</u>. Mortgagor shall not be entitled to any notices of any nature whatsoever from Mortgagee except with respect to matters for which this Mortgage specifically and expressly provides for the giving of notice by Mortgagee to Mortgagor and except with respect to matters for which Mortgagee is required by applicable law to give notice, and Mortgagor hereby expressly waives the right to receive any notice from Mortgagee with respect to any matter for which this Mortgage does riot specifically and expressly provide for the giving of notice by Mortgagee to Mortgagor.

40. <u>Remedies of Mortgage</u>. In the event that a claim or adjudication is made that Mortgagee has acted unreasonably or unreasonably delayed acting in any case where by law or under the Note, this Mortgage or the Other Security Documents, it has an obligation to act reasonably or promptly, Mortgagee shall not be liable for any monetary damages, and Mortgagor's remedies shall be limited to injunctive relief or declaratory judgment.

Mortgagor: L & L Lott Construction LLC, an Illinois Limited Liability Company
Loan: FTF_133871_56780

41. <u>Sole Discretion of Mortgagee</u>. Wherever pursuant to this Mortgage, Mortgagee exercises any right given to it to approve or disapprove, or any arrangement or term is to be satisfactory to Mortgagee, the decision of Mortgagee to approve or disapprove or to decide that arrangements or terms are satisfactory or not satisfactory shall be in the sole discretion of Mortgagee and shall be final and conclusive, except as may be otherwise expressly and specifically provided herein.

42. <u>Non-Waiver</u>. The failure of Mortgagee to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Mortgage. Mortgagor shall not be relieved of Mortgagor's obligations hereunder by reason of (a) the failure of Mortgagee to comply with any request of Mortgagor or Guarantor to take any action to foreclose this Mortgage or otherwise enforce any of the provisions hereof or of the Note or the Other Security Documents, (b) the release, regardless of consideration, of the whole or any part of the Mortgaged Property, or of any person liable for the Debt or any portion thereof; or (c) any agreement or stipulation by Mortgagee extending the time of payment or otherwise modifying or supplementing the terms of the Note, this Mortgage or the Other Security Documents. Mortgagee may resort for the payment of the Debt to any other security held by Mortgagee in such order and manner as Mortgagee, in its discretion, may elect. Mortgagee may take action to recover the Debt, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of Mortgagee thereafter to foreclose this Mortgage. The rights of Mortgagee under this Mortgage shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Mortgagee shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision. Mortgagee shall not be limited exclusively to the rights and remedies herein stated but shall be entitled to every right and remedy now or hereafter afforded at law or in equity.

43. <u>No Oral Change.</u> This Mortgage, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Mortgagor or Mortgagee, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

44. <u>Liability</u>. If Mortgagor consists of more than one person, the obligations and liabilities of each such person hereunder shall be joint and several. This Mortgage shall be binding upon and inure to the benefit of Mortgagor and Mortgagee and their respective successors and assigns forever.

45. <u>Inapplicable Provisions</u>. If any term, covenant or condition of the Note or this Mortgage is held to be invalid, illegal or unenforceable in any respect, the Note and this Mortgage shall be construed without such provision.

24

46. <u>Headings. Etc</u>. The headings and captions of various paragraphs of this Mortgage are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

47. <u>Duplicate Originals</u>. This Mortgage may be executed in any number of duplicate originals and each such duplicate original shall be deemed to be an original.

48. <u>Definitions</u>. Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Mortgage may be used interchangeably in singular or plural form and the word "<u>Mortgagor</u>" shall mean "each Mortgagor and any subsequent owner or owners of the Mortgaged Property or any part thereof or any interest therein," the word "<u>Mortgagee</u>" shall mean "Mortgagee and any subsequent holder of the Note," the word "<u>Note</u>" shall mean "the Note and any other evidence of indebtedness secured by this Mortgage," the word "<u>person</u>" shall include an individual, corporation, partnership, trust, unincorporated association, government, governmental authority, and any other entity, and the words "<u>Mortgaged Property</u>" shall include any portion of the Mortgaged Property and any interest therein. Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

49. <u>PREJUDGMENT REMEDY WAIVER</u>. THE MORTGAGOR ACKNOWLEDGES THAT THE LOAN EVIDENCED BY THE NOTE IS A COMMERCIAL TRANSACTION AND WAIVES ITS RIGHTS TO NOTICE AND HEARING ALLOWED BY ANY STATE OR FEDERAL LAW WITH RESPECT TO ANY PREJUDGMENT REMEDY WHICH THE MORTGAGEE MAY DESIRE TO USE, AND FURTHER, WAIVES DILIGENCE, DEMAND, PRESENTMENT FOR PAYMENT, NOTICE OF NONPAYMENT, PROTEST AND NOTICE OF PROTEST, AND NOTICE OF ANY RENEWALS OR EXTENSIONS OF THE NOTE. THE MORTGAGOR ACKNOWLEDGES THAT IT MAKES THIS WAIVER KNOWINGLY, WILLINGLY, VOLUNTARILY, WITHOUT DURESS AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH ITS ATTORNEY. MORTGAGOR FURTHER CONSENTS TO THE ISSUANCE OF ANY SUCH PREJUDGMENT REMEDIES WITHOUT A BOND OR OTHER SECURITY AND AGREES NOT TO REQUEST OR FILE MOTIONS SEEKING TO REQUIRE THE POSTING OF A BOND IN CONNECTION WITH MORTGAGEE'S EXERCISE OF ANY PREJUDGMENT REMEDIES.

50. <u>JURY TRIAL WAIVER</u>. THE MORTGAGOR WAIVES TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION, PROCEEDING OR ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE NOTE OR THE FINANCING TRANSACTION OF WHICH THE NOTE IS A PART OR THE DEFENSE OR ENFORCEMENT OF ANY OF THE HOLDER'S RIGHTS AND REMEDIES IN CONNECTION THEREWITH. THE MORTGAGOR ACKNOWLEDGES THAT IT

Mortgagor: L & L Lott Construction LLC, an Illinois Limited Liability Company
Loan:FTF_133871_56780

MAKES THIS WAIVER KNOWINGLY, VOLUNTARILY, WITHOUT DURESS AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH ITS ATTORNEY.

51. <u>Consent to Jurisdiction</u>. The Mortgagor hereby consents that any action or proceeding against the Mortgagor in connection with any of the Loan Documents (as defined in the Note) may be commenced and maintained in any court within the State of Illinois or in the United States District Court for the Northern District of Illinois. The Mortgagor agrees that the courts of the State of Illinois or in the United States District Court for the Northern District of Illinois shall have jurisdiction with respect to the subject matter hereof and the person of the Mortgagor. The Mortgagor hereby waives the requirement of personal service of the summons and complaint or other process or papers issued in any action or proceeding against Mortgagor under this Mortgage or the Loan Documents and agrees that service of such summons and complaint, or other process or papers may, at Mortgagee's option, be made by regular or certified mail addressed to the Mortgagor at the respective addresses of the Mortgagor set forth herein. The Mortgagor agrees not to assert any defense to any action or proceeding initiated in any courts of the State of Illinois or in the United States District Court for the Northern District of Illinois by Mortgagee based upon improper venue or inconvenient forum. It is hereby agreed that service of process on Mortgagor may be made on any manager, officer, director or agent for service of process. The Mortgagor agrees that any action brought by the Mortgagor shall be commenced and maintained only in a court of federal judicial district or county in which Mortgagee has a place of business in Illinois. Nothing contained in this Section shall be interpreted or construed in any way to limit the right of Mortgagee to: (i) serve process in any other manner or on any other person or entity (including without limitation personal service and service on the Secretary of State of Illinois) and/or (ii) bring any action or proceeding in courts other than courts of the State of Illinois or in the United States District Court for the Northern District of Illinois.

52. <u>Commercial Loan</u>. Mortgagor represents and warrants that the Loan and other financial accommodations included in the Debt secured by the Mortgage were obtained solely for the purpose of carrying on or acquiring a business or commercial investment and not for residential, consumer or household purposes.

53. <u>Set-Off</u>. In addition to any rights and remedies of Mortgagee provided by this Mortgage or the Other Security Documents and by law, Mortgagee shall have the right, without prior notice to Mortgagor, any such notice being expressly waived by Mortgagor to the extent permitted by applicable law, upon any amount becoming due and payable by Mortgagor under the Note, this Mortgage or the Other Security Documents (whether at the stated maturity, by acceleration or otherwise) to set-off and appropriate and apply against such amount any and all deposits (general or special, time or demand, provisional or final), in any currency, and any other credits, indebtedness or claims, in any currency, in each case whether direct or indirect, absolute or contingent, matured or unmatured, at any time held

26

or owing by Mortgagee or any affiliate thereof to or for the credit or the account of Mortgagor.

54.  **Representations, Warranties and Covenants.**   Mortgagor represents, warrants and covenants to Mortgagee:

54.1.  Mortgagor has obtained, or will obtain in the ordinary course of construction, all necessary certificates, licenses and other approvals, governmental and otherwise, necessary for the construction of the planned improvements at the Mortgaged Property and all required zoning, land use, environmental and other similar permits or approvals for such construction, all of which are in full force and effect as of the date hereof and not subject to revocation, suspension, forfeiture or modification.

54.2.  The Mortgaged Property and the present and contemplated use and occupancy thereof are in material compliance with all applicable zoning ordinances, land use and Environmental Laws and other similar laws.

54.3.  All utilities, water and sewer systems required for the current or contemplated use of the Mortgaged Property are available for the Mortgaged Property. All utility service is provided by public utilities and the Mortgaged Property has accepted or is equipped to accept such utility service.

54.4.  All public roads and streets necessary for service of and access to the Mortgaged Property for the current or contemplated use thereof have been completed, are serviceable and are physically and legally open for use by the public.

54.5.  All costs and expenses of any and all labor, materials, supplies and equipment used in the construction of the Improvements to date, if any, have been paid in full or are being paid in the ordinary course of business.

54.6.  All liquid and solid waste disposal, septic and sewer systems located on the Mortgaged Property are in a good and safe condition and repair and in material compliance with all Applicable Laws.

54.7.  The Mortgaged Property is the only property owned by Mortgagor and Mortgagor shall not acquire additional property without the prior written consent of Mortgagee.

55.  **Riders to this Mortgage.**  If one or more riders are executed by Borrower and recorded together with this Mortgage, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Mortgage as if the rider(s) were a part of this Mortgage.

56. <u>Cross-Collateralization</u>. In addition to the Note, this Mortgage secures all obligations, debts, and liabilities, plus interest thereon, of Mortgagor to Lender and/or Lender's successors and assigns, as well as all claims by Lender against Mortgagor, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Mortgagor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party, or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

57. <u>Due on Sale – Consent by Lender</u>. Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Mortgaged Property, or any interest in the Mortgaged Property. A "sale or transfer" means the conveyance of the Mortgaged Property or any right, title, or interest in the Mortgaged Property; whether legal, beneficial, or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than 3 years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Mortgaged Property, or by any other method of conveyance of an interest in the Mortgaged Property. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Illinois law.

58. <u>Appraisal of Mortgaged Property</u>. Lender shall have the right to request an appraisal of the Mortgaged Property compiled by an appraiser selected by Lender as often as Lender reasonably believes is necessary. Mortgagor shall reimburse Lender for any such appraisal, through Mortgagor's obligation to do so, absent an Event of Default or some modification to the Debt, shall be limited to once annually. Mortgagor shall cooperate with Lender's appraiser in providing reasonable access to the Mortgaged Property and such other information as Lender and/or such appraiser reasonably requires for purposes of completing the appraisal. Any such appraisal shall be the property of Lender. Moreover, if any such appraisal demonstrates that there has been a material decline in the value of the Mortgaged Property such that the loan to value ratio (as defined below) no longer meets Lender's underwriting requirements, Lender reserves the right to demand from Borrower a principal reduction payment in an amount sufficient to reduce the loan to value ratio to meet such guidelines. Failure of Borrower to make such payment within sixty (60) days after demand therefore shall be an additional Event of Default under this Mortgage. As used herein, "loan to value ratio" means the ratio of (i) the then outstanding Debt to (ii) the then "as is" appraised value of the Mortgaged Property.

59. <u>Waivers by Mortgagor</u>

59.1. <u>WAIVER OF HOMESTEAD EXEMPTION.</u> MORTGAGOR HEREBY RELEASES AND WAIVES ALL RIGHTS AND BENEFITS OF THE HOMESTEAD EXEMPTION LAWS OF THE STATE OF ILLINOIS AS TO ALL INDEBTEDNESS SECURED BY THIS MORTGAGE.

59.2. <u>WAIVER OF RIGHT OF REDEMPTION.</u> NOTWITHSTANDING ANY OF THE PROVISIONS TO THE CONTRARY CONTAINED IN THIS MORTGAGE, THE MORTGAGOR HEREBY WAIVES, TO THE EXTENT PERMITTED UNDER 735 ILCS 5/15-1601 OR ANY SIMILAR LAW EXISTING AFTER THE DATE OF THIS MORTGAGE, ANY AND ALL RIGHTS OF REDEMPTION ON MORTGAGOR'S BEHALF AND ON THE BEHALF OF ANY OTHER PERSONS PERMITTED TO REDEEM THE PROPERTY.

59.3. To the extent permitted by law, Mortgagor shall not apply for or avail itself of any appraisement, valuation, redemption, reinstatement, stay, extension or exemption laws or any so-called "Moratorium Laws" now existing or hereinafter enacted, in the order to prevent or hinder the enforcement of foreclosure of this Mortgage and hereby wives the benefit of such laws. Mortgagor, for itself and all who may claim through or under it, waives any and all right to have the property and estates comprising the Mortgaged Property marshaled upon any foreclosure of the lien hereof and agrees that any court having jurisdiction to foreclose such lien may order the Mortgage Property sold in its entirety.

59.4. In any action commenced by Mortgagee by reason of Mortgagor's default under the terms of this Mortgage or Note or bond secured hereby, whether such action be an action to foreclose or an action under the bond or Note, Mortgagor hereby waives any defense other than payment, and waives any right to set-off by way of damages, recoupment or counterclaim in damages (unless a mandatory counterclaim), whether arising out of this Mortgage or the bond or Note or otherwise, which Mortgagor may otherwise be entitled to. Mortgagor shall have an independent action for such claim and such independent action shall not at any time be joined or consolidated with any action commenced by Mortgagee under this Mortgage or the bond or Note secured hereby, unless a mandatory counterclaim.

60. <u>Time Is of the Essence.</u> Time is of the essence in the performance of this Mortgage.

61. <u>State Specific Provision(s).</u>

61.1. <u>Mortgage Deed; Future Advances.</u> This Mortgage is an "Mortgage Deed" securing a promissory note and the holder hereof shall have all of the rights, powers and protection to which the holder of any Mortgage Deed securing a promissory note is entitled under Illinois law. Mortgagee is specifically permitted, at its option and in

Mortgagor: L & L Lott Construction LLC, an Illinois Limited Liability Company
Loan:FTF_133871_56780

its discretion, to make additional advances under this Security Instrument as contemplated by Illinois law. Each and every such advance shall be secured by this Mortgage equally with, and with the same priority as, the original indebtedness secured hereby; provided, however, that (i) each such advance may be either evidenced by additional notes or recorded in an account on the books of Mortgagee; (ii) no such advance shall cause the principal amount of the Debt secured hereby to exceed the amount first set forth above; and (iii) the time of repayment thereof shall not exceed the maturity of the original Debt secured hereby as stated above. In furtherance of the foregoing, Lender and Borrower intend that this Mortgage shall secure the unpaid balance of Loan advances made by the holder hereof after this Mortgage is delivered to the County Recorder for record to the fullest extent and with the highest priority contemplated by Illinois law. The maximum principal amount of all Loan advances, in the aggregate and exclusive of interest accrued thereon and protective advances made, which may be outstanding at any one time, is $97,000.00 in the aggregate. This Mortgage shall be valid and have priority to the extent of the maximum amount secured hereby over all subsequent liens and encumbrances, including statutory liens, excepting solely taxes and assessments levied on the Property given priority by law. If and to the extent applicable, Borrower hereby waives any right it may have under Illinois law. This Mortgage secures an obligation incurred for the construction of Improvements on the Mortgaged Property and, consequently, is a "construction mortgage" within the meaning of the Uniform Commercial Code as enacted in Illinois.

61.2. <u>Mechanics Liens</u>. Borrower shall pay, from time to time and when due, all lawful claims and demands of mechanics, materialmen, laborers, and others that, if unpaid, might result in, or permit the creation of, a lien on the Mortgaged Property or on the rents arising therefrom. Borrower shall do or cause to be done everything necessary so that the lien and security interest of Lender in the Mortgaged Property is fully preserved and protected, at Borrower's expense and without any expense to Lender. If Borrower is empowered to discharge any mechanic's, laborer's, materialman's or other lien against the Mortgaged Property by the posting of such a bond or other security under applicable law, Borrower hall not have to make such payment of Borrower posts such bond or other security on the earlier of (a) 10 days after the filing or recording of the same, or (b) within the time prescribed by appliable law so as not to place the Mortgaged Property in jeopardy of forfeiture.

61.3. <u>Lender's Fees and Expenses</u>. If Lender institutes any suit or action to enforce any of the terms of the Mortgage, Lender shall be entitled to recover such sums as the court may adjudge reasonable as attorneys' fees at trial or upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate

30

Mortgagor: L & L Lott Construction LLC, an Illinois Limited Liability Company
Loan:FTF_133871_56780

from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorney's fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyor's reports, and appraisal fees and title insurance, to the extend permitted by applicable law. Mortgagor also will pay any court costs, in addition to all other sums provided by law, including, without limitation, a payoff or release fee not to exceed $500.00.

**THIS IS A BALLOON MORTGAGE AND THE FINAL PRINCIPAL PAYMENT OF THE PRINCIPAL BALANCE DUE UPON MATURITY IS $97,000.00 TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS AGREEMENT.**

[END OF PAGE – SIGNATURE PAGE TO FOLLOW]

Mortgagor: L & L Lott Construction LLC, an Illinois Limited Liability Company
Loan:FTF_133871_56780

IN WITNESS WHEREOF, the Mortgagor, by and through the Mortgagor's authorized signatory, has executed and delivered this Mortgage, Assignment of Leases and Rents, Fixture Filing, and Security Agreement to the Mortgagee on L & L Lott Construction LLC, an Illinois Limited Liability Company.

MORTGAGOR:
L & L Lott Construction LLC
an Illinois Limited Liability Company

By:   Andre Lott
Its:   Sole Member and Manager

## NOTARIAL CERTIFICATE

STATE OF ILLINOIS         )
                              ) SS:
COUNTY OF _____Cook_____ )

This is an acknowledgement clause; no oath or affirmation was administered to the signer.

The foregoing Instrument was acknowledged before me this _2ND_ day of _March_, 2022 by Andre Lott, Sole Member+Manager of L & L Lott Construction LLC, an Illinois Limited Liability Company.

OFFICIAL SEAL
JON J IM
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 03/14/2022

Notary Public
State of Illinois

32

Mortgagor: L & L Lott Construction LLC, an Illinois Limited Liability Company
Loan:FTF_133871_56780

## EXHIBIT A

## LEGAL DESCRIPTION

LOT 17 IN JOHN R. LYMAN'S RESUBDIVISION OF LOTS 16 TO 30, BOTH INCLUSIVE IN MARGARET R. MCKEOWN'S RESUBDIVISION OF BLOCK 10 IN JONES AND OTHERS SUBDIVISION IN THE WEST 1/2 OF SECTION 29, TOWNSHIP 38 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS

Doc#. 2207406330 Fee: $98.00
Karen A. Yarbrough
Cook County Clerk
Date: 03/15/2022 02:22 PM Pg: 1 of 5

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER** (optional)
Samantha Licker (646) 895-6090

**B. E-MAIL CONTACT AT FILER** (optional)
Samantha.licker@fundthatflip.com

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

Samantha Licker
Fund That Flip
1300 E. 9th St., Suite 800
Cleveland, OH 44114

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. **DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| L & L Lott Construction LLC | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 8506 S. Aberdeen Street | Chicago | IL | 60620 | |

2. **DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. **SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| FTF Lending, LLC | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1300 E. 9th St., Suite 800 | Cleveland | OH | 44114 | |

4. **COLLATERAL:** This financing statement covers the following collateral:

See Exhibit A annexed hereto and made a part hereof as well as all assets of Debtor.

Location of Real Estate:
(1) 1414 W. 73rd Place, Chicago, IL 60636

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:    6b. Check only if applicable and check only one box:
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility   ☐ Agricultural Lien  ☐ Non-UCC Filing

7. **ALTERNATIVE DESIGNATION** (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
FTF_56780

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME

**L & L Lott Construction LLC**

OR

9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)    SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| | | | | |
|---|---|---|---|---|
| 10a. ORGANIZATION'S NAME | | | | |
| OR 10b. INDIVIDUAL'S SURNAME | | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | | SUFFIX |
| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

11. ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

| | | | | |
|---|---|---|---|---|
| 11a. ORGANIZATION'S NAME | | | | |
| OR 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

13. ☑ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut   ☐ covers as-extracted collateral   ☑ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

16. Description of real estate:

**See Exhibit B for description of Real Estate.**

17. MISCELLANEOUS:

FTF_56780

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

## EXHIBIT A

Debtor:   L &L Lott Construction LLC, a Illinois Limited Liability Company
Secured Party:  FTF LENDING, LLC, A DELAWARE LIMITED LIABILITY
      COMPANY

ITEM 4 (*continued*): This FINANCING STATEMENT covers the following types or items of property (which, together with the Real Property, as defined below, constitutes the "Property") in which Debtor has any interest, whether currently owned or hereafter acquired, relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the real property (the "Real Property") more particularly described on Exhibit B attached hereto (whether or not subsequently removed from the Real Property), including, without limitation, the follows:

a. all easements, rights-of-way, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, all rights to oil, gas, minerals, coal and other substances of any kind or character, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances of any nature whatsoever, in any way belonging, relating or pertaining to the Real Property and the Improvements and the reversion and reversions, remainder and remainders, and all land lying in the bed of any street, road, highway, alley or avenue, opened, vacated or proposed, in front of or adjoining the Real Property, to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtsey and rights of curtsey, property, possession, claim and demand whatsoever, both at law and in equity, of Debtor of, in and to the Real Property and the Improvements and every part and parcel thereof, with the appurtenances thereto;

b. all machinery, furniture, furnishings, equipment, computer software and hardware, fixtures (including, without limitation, all heating, air conditioning, plumbing, lighting, communications and elevator fixtures) and other property of every kind and nature, whether tangible or intangible, whatsoever owned by Debtor, or in which Debtor has or shall have an interest, now or hereafter located upon the Real Property and the Improvements, or appurtenant thereto, and usable in connection with the present or future operation and occupancy of the Real Property and the Improvements and all building equipment, materials and supplies of any nature whatsoever owned by Debtor, or in which Debtor has or shall have an interest, now or hereafter located upon the Real Property and the Improvements, or appurtenant thereto, or usable in connection with the present or future operation, enjoyment and occupancy of the Real Property and the Improvements (collectively, the "Equipment"), including any leases of any of the foregoing, any deposits existing at any time in connection with any of the foregoing, and the proceeds of any sale or transfer of the foregoing, and the right, title and interest of Debtor in and to any of the Equipment that may be subject to any "security interests" as defined in the Uniform Commercial Code, as adopted and enacted by the State or States where any of the Real Property is located (the "Uniform Commercial Code"), superior in lien to the lien of the

Debtor: L &L Lott Construction LLC, a Illinois Limited Liability Company
Loan:FTF_133871_56780

Mortgage, Assignment of Leases and Rents, Fixture Filing, and Security Agreement; and

c.  all awards or payments, including interest thereon, that may heretofore and hereafter be made with respect to the Real Property and the Improvements, whether from the exercise of the right of eminent domain or condemnation (including, without limitation, any transfer made in lieu of or in anticipation of the exercise of said rights), or for a change of grade, or for any other injury to or decrease in the value of the Real Property and Improvements; and

d.  all leases and other agreements or arrangements heretofore or hereafter entered into affecting the use, enjoyment or occupancy of, or the conduct of any activity upon or in, the Real Property and the Improvements, including any extensions, renewals, modifications or amendments thereof (collectively, the "<u>Leases</u>") and all rents, rent equivalents, moneys payable as damages or in lieu of rent or rent equivalents, royalties (including, without limitation, all oil and gas or other mineral royalties and bonuses), income, fees, receivables, receipts, revenues, deposits (including, without limitation, security, utility and other deposits), accounts, cash, issues, profits, charges for services rendered, and other payment and consideration of whatever form or nature received by or paid to or for the account of or benefit of Debtor or its agents or employees from any and all sources arising from or attributable to the Real Property and the Improvements (collectively, the "<u>Rents</u>"), together with all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Debt; and

e.  all proceeds of and any unearned premiums on any insurance policies covering the Real Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Real Property; and

f.  all accounts, escrows, documents, instruments, chattel paper, claims, deposits and general intangibles, as the foregoing terms are defined in the Uniform Commercial Code, and all franchises, trade names, trademarks, symbols, service marks, books, records, plans, specifications, designs, drawings, permits, consents, licenses, management agreements, contract rights (including, without limitation, any contract with any architect or engineer or with any other provider of goods or services for or in connection with any construction, repair, or other work upon the Real Property), approvals, actions, refunds of real estate taxes and assessments (and any other governmental impositions related to the Real Property), and causes of action that now or hereafter relate to, are derived from or are used in connection with the Real Property, or the use, operation, maintenance, occupancy or enjoyment thereof or the conduct of any business or activities thereon (collectively, the "<u>Intangibles</u>"); and

g.  all proceeds, products, offspring, rents and profits from any of the foregoing, including, without limitation, those from sale, exchange, transfer, collection, loss, damage, disposition, substitution or replacement of any of the foregoing.

2

Debtor: L &L Lott Construction LLC, a Illinois Limited Liability Company
Loan:FTF_133871_56780

## EXHIBIT B

## LEGAL DESCRIPTION

LOT 17 IN JOHN R. LYMAN'S RESUBDIVISION OF LOTS 16 TO 30, BOTH INCLUSIVE IN MARGARET R. MCKEOWN'S RESUBDIVISION OF BLOCK 10 IN JONES AND OTHERS SUBDIVISION IN THE WEST 1/2 OF SECTION 29, TOWNSHIP 38 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS

Doc#. 2436530412 Fee: $107.00
MONICA GORDON
COOK COUNTY CLERK'S OFFICE
Date 12/30/2024 4:26 PM Pg: 1 of 4

THIS INSTRUMENT WAS PREPARED BY AND AFTER RECORDATION PLEASE RETURN TO:
Michael J. Palumbo, Esquire
Gingo Palumbo Law Group LLC
4700 Rockside Road, Suite 440, Independence, Ohio 44131
(216) 503-9512 / michael@gplawllc.com

| | |
|---|---|
| ADDRESS | 1414 West 73rd Place, Chicago, Illinois 60636 |
| PARCEL ID | 20-29-122-021-0000 |
| COUNTY | Cook |
| LOAN ID | 9160086856 |

### ASSIGNMENT OF MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, FIXTURE FILING, AND SECURITY AGREEMENT

      **FTF LENDING, LLC, a Delaware limited liability company** (the "**Assignor**"), having a principal place of business of 1300 East 9th Street, Suite 800, Cleveland, Ohio 44114, for value received, hereby sells, transfers, assigns, and conveys to **FTF REO, LLC, a Delaware limited liability company** (the "**Assignee**"), having a principal place of business of 1300 East 9th Street, Suite 800, Cleveland, Ohio 44114, without recourse or warranty, express or implied, all of the Assignor's right, title and interest in that certain:

      **Mortgage, Assignment of Leases and Rents, Fixture Filing, and Security Agreement** (the "**Mortgage**") dated March 2, 2022, executed by Borrower/Mortgagor, **L & L Lott Construction LLC, an Illinois limited liability company**, delivered to Lender/Mortgagee, **FTF Lending, LLC, a Delaware limited liability company**, and recorded on March 15, 2022 in the Office of the Clerk, Cook County, Illinois as Document #2207406329. The Mortgage refers to that certain lot, tract, parcel, or piece of ground described on **Exhibit A** attached hereto (the "**Property**") and secures that certain commercial loan in the original principal amount of $97,000.00.

TOGETHER with the promissory note or obligation described in said Mortgage, and the moneys due and to grow due thereon with the interest; TO HAVE AND TO HOLD the same unto the Assignee and to the successors, legal representatives and assigns of the Assignee forever.

      The Assignor hereby represents and warrants that (i) Assignor is the sole legal and equitable owner and holder of the Assignor's interest in the Mortgage, (ii) Assignor has full power to sell, transfer and assign the same; (iii) Assignor has executed no release, discharge, satisfaction, extension, modification, cancellation, pledge or hypothecation thereof; (iv) Assignor has no claims against the borrower other than as set forth in the Mortgage, all of which claims are being assigned to the Assignee herein; (v) Assignor has no

interest in the Mortgage other than the interest which is being assigned herein; and (vi) the outstanding principal amount of $97,000.00 is now due and owing under the Mortgage.

This Assignment is made without recourse and without representation or warranty, express, implied, or by operation of law, of any kind and nature whatsoever by the Assignor.

The effective date of this Instrument is November 12, 2024.

[END OF PAGE – SIGNATURE PAGE TO FOLLOW]

IN WITNESS WHEREOF, the Assignor, by and through the Assignor's authorized signatory, has executed this Assignment as of the aforesaid Effective Date.

ASSIGNOR:
FTF LENDING, LLC,
a Delaware limited liability company

By:   Cindy Funk
Its:   Vice President of Account Servicing

## NOTARIAL CERTIFICATE

STATE OF OHIO      )
                      ) SS:
COUNTY OF CUYAHOGA    )

On this 20th day of December, 2024, before me, the undersigned, personally appeared Cindy Funk, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument, and that such individual made such appearance before the undersigned in Independence, Ohio.

Attorney Anthony J. Gingo
Resident Cuyahoga County
Notary Public, State of Ohio
My Commission Has No Expiration Date
Sec 147.03 RC

Anthony J. Gingo, Notary Public, State of Ohio

EXHIBIT A

LEGAL DESCRIPTION

LOT 17 IN JOHN R. LYMAN'S RESUBDIVISION OF LOTS 16 TO 30, BOTH INCLUSIVE IN
MARGARET R. MCKEOWN'S RESUBDIVISION OF BLOCK 10 IN JONES AND OTHERS
SUBDIVISION IN THE WEST 1/2 OF SECTION 29, TOWNSHIP 38 NORTH, RANGE 14 EAST OF THE
THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Address:      1414 West 73rd Place, Chicago, Illinois 60636
Parcel ID:    20-29-122-021-0000

Doc#. 2500324052 Fee: $107.00
MONICA GORDON
COOK COUNTY CLERK'S OFFICE
Date 1/3/2025 11:26 AM Pg: 1 of 3

## UCC FINANCING STATEMENT AMENDMENT
**FOLLOW INSTRUCTIONS**

**A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)**
Michael J. Palumbo - (216) 503-9512

**B. E-MAIL CONTACT AT SUBMITTER (optional)**
michael@gplawllc.com

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

Gingo Palumbo Law Group LLC
4700 Rockside Road, Suite 440
Independence, Ohio 44131

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
Doc #2207406330 recorded on 03/15/2022

**1b.** ☑ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13.

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party(ies) authorizing this Termination Statement

**3.** ☑ **ASSIGNMENT:** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9; check ASSIGN Collateral box in item 8 and describe the affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5. PARTY INFORMATION CHANGE:**

Check one of these two boxes:
This Change affects ☐ Debtor or ☑ Secured Party of record

AND Check one of these three boxes to:
☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

**6a. ORGANIZATION'S NAME**
L & L Lott Construction LLC

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

**7a. ORGANIZATION'S NAME**
FTF REO, LLC

**7b. INDIVIDUAL'S SURNAME**

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)                                    SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1300 East 9th Street, Suite 800 | Cleveland | OH | 44114 | |

**8. COLLATERAL CHANGE:** Check only one box:
☐ ADD collateral    ☐ DELETE collateral    ☑ RESTATE covered collateral    ☐ ASSIGN* collateral
Indicate collateral:       *Check ASSIGN COLLATERAL only if the assignee's power to amend the record is limited to certain collateral and describe the collateral in Section 8

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

**9a. ORGANIZATION'S NAME**
FTF Lending, LLC

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

**10. OPTIONAL FILER REFERENCE DATA:**
L & L Lott Construction LLC - Loan 56780 - 1414 W 73rd Pl

**FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 07/01/23)**

# UCC FINANCING STATEMENT AMENDMENT ADDENDUM
FOLLOW INSTRUCTIONS

**11. INITIAL FINANCING STATEMENT FILE NUMBER:** Same as item 1a on Amendment form
Doc #2207406330 recorded on 03/15/2022

**12. NAME OF PARTY AUTHORIZING THIS AMENDMENT:** Same as item 9 on Amendment form

| | 12a. ORGANIZATION'S NAME |
|---|---|
| | FTF Lending, LLC |
| OR | 12b. INDIVIDUAL'S SURNAME |
| | FIRST PERSONAL NAME |
| | ADDITIONAL NAME(S)/INITIAL(S) — SUFFIX |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**13.** Name of DEBTOR on related financing statement (Name of a current Debtor of record required for indexing purposes only in some filing offices - see Instruction item 13): Provide only **one** Debtor name (13a or 13b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); see Instructions if name does not fit

| | 13a. ORGANIZATION'S NAME |
|---|---|
| OR | L & L Lott Construction LLC |
| | 13b. INDIVIDUAL'S SURNAME — FIRST PERSONAL NAME — ADDITIONAL NAME(S)/INITIAL(S) — SUFFIX |

**14. ADDITIONAL SPACE FOR (CHECK ONE BOX):** ☐ ITEM 8 (Collateral) OR ☐ OTHER INFORMATION (Please Describe)

**15. This FINANCING STATEMENT AMENDMENT:**
☐ covers timber to be cut ☐ covers as-extracted collateral ☑ is filed as a fixture filing

**16.** Name and address of a RECORD OWNER of real estate described in item 17 (if Debtor does not have a record interest):

L & L Lott Construction LLC
8506 South Aberdeen Street
Chicago, Illinois 60620

**17.** Description of real estate:

1414 West 73rd Place, Chicago, Illinois 60636
(PIN 20-29-122-021-0000)
Description of real estate in Exhibit A.

**18. MISCELLANEOUS:**
L & L Lott Construction LLC - Loan 56780 - 1414 W 73rd Pl

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT ADDENDUM (Form UCC3Ad) (Rev. 07/01/23)

EXHIBIT A

LEGAL DESCRIPTION

LOT 17 IN JOHN R. LYMAN'S RESUBDIVISION OF LOTS 16 TO 30, BOTH INCLUSIVE IN MARGARET R. MCKEOWN'S RESUBDIVISION OF BLOCK 10 IN JONES AND OTHERS SUBDIVISION IN THE WEST 1/2 OF SECTION 29, TOWNSHIP 38 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Address:      1414 West 73rd Place, Chicago, Illinois 60636
Parcel ID:    20-29-122-021-0000

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
CHICAGO DIVISION

FTF LENDING LLC, a Delaware limited
liability company

                                    Plaintiff

vs.

L & L LOTT CONSTRUCTION LLC, an Illinois
limited liability company, having taken title as
L&L LOTT CONSTRUCTION CO., and
ANDRE LOTT, an individual

                                    Defendants

CASE NO.: 1:23-cv-07504

## ORDER PERMITTING FTF REO, LLC TO INTERVENE AND SUBSTITUTE IN FOR FTF LENDING, LLC AS PROPER PARTY PLAINTIFF AND REAL PARTY IN INTEREST PURSUANT TO FED. R. CIV. P. 24(a)(2) AND 25(c) AND 735 ILCS 5/15-1501(d)-(e)

This cause came to be heard upon the Motion of Movant-Intervenor Plaintiff FTF REO, LLC, a Delaware limited liability company, to intervene and substitute in for FTF Lending, LLC as proper party Plaintiff and real party in interest pursuant to Rules 24(a)(2) and 25(c) of the Federal Rules of Civil Procedure and 735 ILCS 5/15-1501(d)-(e). The Motion was filed on January 6, 2025.

Having fully considered the Motion, with due notice having been served upon the Parties, the evidence and record and/or arguments of counsel, it is, therefore, ORDERED, ADJUDGED and DECREED:

A.   The Motion is granted.

B.   FTF REO, LLC shall be substituted in for FTF Lending, LLC as the proper party Plaintiff and real party in interest in the within action.

C.   The Clerk of Court shall amend the case caption to effectuate this Order.

D.   FTF REO, LLC shall file a Disclosure Statement Form in accordance with Rule 7.1 of the Federal Rules of Civil Procedure within five (5) business days of the entry of this Order.

E.   Counsel for FTF REO, LLC shall file an entry of appearance on behalf of FTF REO, LLC in accordance with Local Civil Rule 83.16 of the United States District Court for the Northern District of Illinois within 5 business days of the entry of this Order.

F.   FTF REO, LLC shall serve a copy of this Order upon all Defendants by electronic mail, UPS delivery, United States certified mail, return receipt requested, and/or United States regular mail, postage prepaid.

IT IS SO ORDERED.

BY THE COURT:


_____          _____
DATE                                      STEVEN C. SEEGER
                                          UNITED STATES DISTRICT JUDGE